Crew *et al. v.* Dixon.

No. 14,338.

## CREW ET AL. *v.* DIXON.

129   85
147  393

129   85
152  496

WILL.—*Construction.—Life-Estate.—Power of Disposition.— Vested Remainder.*—The will of the testator, after mentioning the disposition of certain property during his lifetime, devised to his wife all of his other property, to be held and used by her during her natural life. The will also provided, as to certain notes, that she was to collect the same, with the privilege to use so much thereof as she might deem necessary to carry on her business, etc. The will further provided : " But before her (the wife's) death, I desire her to provide by will, or otherwise, for a distribution of whatever of my estate may remain in her hands among her and my children in such manner as she in her judgment shall deem best and most equitable. Such distribution not to take effect until after her death."

*Held*, that when a will limits the estate of the first taker to life, the devisee can not take a fee, although he may be invested with a power to appoint those who shall take that estate.

*Held*, also, that under the will as to the personal property a right was vested in the widow to use such of it as she chose, and to distribute what remained at her death, at her pleasure, among the members of the class designated by the testator.

*Held*, also, that as to the real estate the fee was not in the widow at any time, and she could not devise the same, and that the remainder was vested in the heirs at the date of the testator's death.

SAME.—*Disinheritance of Heir.—Ambiguity as to.*—An heir can not be disinherited unless the intention to disinherit be expressed, or is to be clearly and necessarily implied. Where one construction of an ambiguous will leads to the disinheritance of the heir, and another to a result favorable to the heir, the latter construction must be adopted.

SAME.—*The Word " Estate " In.—How Construed.*—The word " estate" in a will may, if it is necessary to do so in order to carry out the intention of the testator, be construed to mean one species of property only. It does not always mean both real and personal property.

From the Clark Circuit Court.

*J. K. Marsh* and *A. Dowling*, for appellants.

*G. H. D. Gibson*, for appellee.

ELLIOTT, J.—Thomas Crew, through whom the parties claim title, was twice married. The appellants are his chil-

Crew *et al. v.* Dixon.

dren by his first marriage. His second wife was Elizabeth Dixon, who was a widow at the time of her marriage to him. The appellee, Eliza Dixon, is her child by her former marriage. Thomas Crew was the owner of personal and real property at the time of his death, and of it he made a testamentary disposition. His widow elected to take under his will. She executed a will wherein she devised to the appellants twenty-five dollars each, and to her daughter the real estate of which her husband, Thomas Crew, died seized.

The provisions of the will of Thomas Crew, so far as they are material to the controversy, are these: "I give, bequeath and devise to my said wife all of my other property of every kind, to be held and used by her during her natural life; the house and lot where I now live to be entirely under her control so long as she shall live, together with all the furniture in the same; and the notes that I may have, to be collected by her in her individual name as they may fall due; the principal of such notes to be held or invested by her as she may deem proper, with the privilege to her to use so much thereof as she may deem necessary to carry on her business or to furnish her a comfortable support. But before her death I desire her to provide by will, or otherwise, for a distribution of whatever of my estate may remain in her hands, among her and my children in such manner as she, in her judgment, shall deem best and most equitable; such distribution not to take effect until after her death."

Where a will limits the estate of the first taker to life, the devisee can not take a fee although he may be invested with a power to appoint those who shall take that estate. In the will before us the estate of the first taker is clearly limited to one for life, for the words employed in describing it expressly designate it as an estate for life, and the superadded words, "to be entirely under her control so long as she shall live," make it impossible to construe the will as devising her the fee. The fee descends to the heirs unless the

will either directly makes, or authorizes some one to make, such disposition of the property as breaks or interrupts the operation of the law. *Thomas* v. *Thomas*, 108 Ind. 576, and authorities cited. As the will under discussion does not expressly and directly dispose of the fee, the law must prevail, unless there is a power of appointment which interrupts its operation.

We are clear that the will does invest the first taker with a power of disposing of some of the property named in the instrument, and we have no doubt that a power may be effectively exercised without a reference to the instrument by which it was created. The settled rule is that a power may be executed without a reference to the instrument creating it. *Downie* v. *Buennagel*, 94 Ind. 228; *South* v. *South*, 91 Ind. 221. But the question of difficulty is as to the nature and extent of the power created by the will of Thomas Crew.

The power is not an absolute one; on the contrary, it is limited and qualified. It is restricted to a class comprising several persons, for it is beyond controversy that the power is to distribute property among persons designated by the testator. The authorities cited by the appellee are far from proving that a power created by words, such as those employed by the testator in this instance, is even a general power. Of *Denson* v. *Mitchell*, 26 Ala. 360, it may be said: First, the question there was as to the estate of the devisee, not as to the mode of exercising the power, and, second, the power was unqualified and unrestricted. In *Doe* v. *Thorley*, 10 East, 438, there were no limiting words, nor were there any such words in *Henderson* v. *Vaulx*, 10 Yerger, 30.

The power which Mrs. Crew assumed to exercise was a special power, and the only question is as to what property was limited. If it covered both the personal and the real property, the appellee must succeed; if it embraced only the personal estate, she must fail. The problem for solution is whether the real estate and the personal property were placed

Crew *et al. v.* Dixon.

in the hands of Mrs. Crew with the absolute power of disposition.  If the will unifies the entire estate, and solidifies in one class both the real and the personal property, then she had authority to disinherit the children of the testator, and devise all the real estate to her daughter.  If, on the other hand, the testator did not intend to bring the real estate under the power by making a single class of property, Mrs. Crew could not defeat the law by disinheriting the heirs and appointing her child to take the fee.

The will, as we have seen, limits the estate of the first taker to life, and gives her control of the real property " so long as she shall live," hence she is excluded from exercising any other power except that which resides in a tenant for life.  The express mention of one thing excludes all others, and hence the limitation of the power of control to life implies that with life all control terminates.  In respect to the personal property, it is otherwise; for, as to that, it is clear that a right was vested in Mrs. Crew to use such of it as she chose, and to distribute what remained at her death at her pleasure, subject only to the limitation that it must be distributed among the members of the class designated by the testator.  There is an express division of the property into classes, and not an unification, for it is provided that one species of property may be transferred, but the other can not be consumed or conveyed.  The personal property was placed under the dominion of Mrs. Crew for the purposes named in the will, but the real estate was only placed under her dominion so long as she lived.  The real estate could, by no possibility, remain in the hands of the widow of the testator at her death, since her death terminated her life-estate, and the power only authorizes her to distribute what remained in her hands.  The power is even further limited, for the words of the will are, " such distribution shall not take effect until after her death."  As the personal property is given to her to use and to consume, and only possession and control of the real estate are given for

life, it is difficult to conceive how the two kinds of property can be regarded as so interfused as to constitute only one class, or species. If, to illustrate by example, the testator's widow had undertaken to convey to her daughter, by deed, the conveyance would have been ineffective, inasmuch as there was no authority vested in her to convey the fee ; for, to repeat what has been said, her estate was for life, and her control was limited to the duration of her estate. To hold that the authority extended beyond life would be to affirm that she took control beyond the time expressly designated by the will. She was not, it is to be remembered, empowered to distribute property generally, but her authority was limited to " whatever remains in her hands," and as she could not convey the fee of the real estate, but could transfer the personal property, the phrase " whatever remains in her hands " can only mean personal property. But more than this, the fee was never in her, for at no time did she have, or could she have, anything more than a life-estate, and as the fee did not " remain in her hands," the power could not operate upon it. Either it must be true that the power did not operate on the fee, or else it must be true that it operated upon an estate not in her hands ; but the latter alternative is excluded by the terms of the will, so that it must be true that the real estate was not placed under the power.

The estate vested in Mrs. Crew being a life-estate she had no such seizin, in virtue of that estate, as empowered her to create a fee by appointment. Sugden gives this illustration of the rule : " If a life-estate, for example, were conveyed to A., to such uses as B. should appoint, and B. were to appoint C. in fee, this disposition could not take effect beyond the interest conveyed to A." Sugden Powers, 231. How far this rule extends it is not important to inquire, for it is sufficient to here employ it as showing that the seizin of the life tenant was not, in itself, sufficient to empower her to create a fee, and to prove also that the fee was not in her. If the fee was not in her at any time, it could not, of course,

remain in her hands at her death. If the fee was not else-where, it was in the heirs, for it was not taken from them by simply carving out the particular estate. If it was not taken from the heirs by the power of appointment, it was a vested remainder at the time of the testator's death. The law favors the vesting of remainders, and presumes that words postpon-ing the estate in remainder relate to the beginning of the en-joyment of the estate, and not to the time of its vest-ing. *Amos* v. *Amos,* 117 Ind. 37 ; *Amos* v. *Amos,* 117 Ind. 19. We are required by this familiar rule to hold that the remainder, if there was one, vested at the time of the testa-tor's death, although the enjoyment was postponed until the death of the devisee of the particular estate. This must be so, unless the words of the will clearly overthrow the rules of law, and this they do not do. If the remainder did vest, no subsequent event could destroy it. In other words, if the remainder in fee was once effectually vested in the heirs, there it remained, for no one was clothed with power to divest it.

Another rule is here influential, and that is this : An heir can not be disinherited, unless the intention to disinherit be expressed, or is to be clearly and necessarily implied. Where one construction of an ambiguous will leads to a disin-heritance of the heir, and another to a result favorable to the heir, the latter construction must be adopted. These famil-iar rules support the decisions in the cases of *Jenkins* v. *Compton,* 123 Ind. 117, and *Wood* v. *Robertson,* 113 Ind. 323. The last named case is of controlling influence in this case, since there is no difference in principle between the two cases, although the words of the will in this case are more favorable to the heirs than the words of the will construed in the case to which we have referred. In that case it was said : " It is true, the testator added to the life-estate a power of disposition, but this does not change the effect of the will upon property remaining in the possession of the widow at the time of her death."

If the testator did not dispose of the fee by a valid and ef-

Crew *et al. v.* Dixon.

fective devise, it unquestionably vested by force of law in his heirs. If he did effectively dispose of it, the disposition must have been made by other and stronger words than those which limited the estate of Mrs. Crew to one for life. It is almost impossible to conceive stronger or clearer words than those which fix the duration of her estate; at all events, we find no words in the will equal in power to those which limit the life-estate, and this limitation necessarily leaves the remainder in fee where the law casts it. The remainder can not be elsewhere placed, unless we hold that the subsequent words of the will make the remainder a contingent one, and leave the heirs without any interest in the fee.

The only words of the will before us which tend to support the conclusion that the testator meant to cut off his own children, or put it in the power of the stepmother to do so, are these: " But before her death I desire her to provide, by will or otherwise, for the disposition of whatever of my estate may remain in her hands, among her and my children." We have shown, as we believe, that these words refer only to the personal property, but if this be not clear, and there is doubt as to the true construction to be placed upon the will, then, under the rules stated, we must give the will a construction that will vest the remainder and protect the heirs, since those rules require us to resolve ambiguous provisions in favor of a vested remainder, and of the heirs. The only words which oppose our conclusion are the words " my estate;" but these words can not prevail against the other words of the will, aided, as they are, by the settled rules of law. The decisions support us in declaring that such a general word as " estate " may be justly construed to mean one species of property only, and that it does not always mean both real and personal property. *Goudie* v. *Johnston,* 109 Ind. 427; *Giles* v. *Little,* 104 U. S. 291; *Smith* v. *Bell,* 6 Peters, 68; *Brant* v. *Virginia, etc., Co.,* 93 U. S. 326; *Green* v. *Hewitt,* 97 Ill. 113 (37 Am. Rep. 102).

Judgment reversed.

Filed May 19, 1891; petition for a rehearing overruled Sept. 16, 1891.