In the Matter of the Final Judicial Settlement of the Accounts of the Executors of the Last Will and Testament of JAMES McCLURE, Deceased.

The will of McC., which was drawn by himself, after giving to his wife all his real and personal estate, provided as follows: " To have and to hold, with full power to collect all rents and income from the same, she to keep in repair and pay all taxes and insurance on the same, with full power to sell any or all such real estate, with the consent of my executors, should it be thought best for the estate; should she marry again, then her right of dower only in my estate. I recommend she appoint a good agent to take charge of my real estate. I also give her discretionary power to give such sums of money to any, as she may think prudent, of my relatives." The widow and another were appointed executors. Upon the final accounting of the executors it appeared that McC. was survived by several children and grandchildren, the children of two deceased sons. *Held*, that the widow took under the will only an estate for life and as to the remainder the testator died intestate.

(Argued November 30, 1892; decided December 13, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made April 4, 1892, which reversed a judgment entered upon a decree of the surrogate of Albany county, made upon a final settlement of the accounts of the executors of James McClure, deceased, holding that his will vested in his widow an estate in fee in his real and personal property.

The facts, so far as material, are stated in the opinion.

*George H. Stevens* for appellants. The power of the surrogate to construe the provisions of the will, so far as may be necessary to enable him to make a proper decree for the distribution of the estate, is well established. (*In re Verplanck*, 27 Hun, 609; 91 N. Y. 450; *Purdy* v. *Hoyt*, 92 id. 446.) Under the will of James McClure, deceased, Mary I. McClure, his wife, and the appellant herein, takes all of his personal property absolutely. (*Parsons* v. *Best*, 1 T. & C. 211; *Clark* v. *Leupp*, 88 N. Y. 228; *Campbell* v. *Beaumont*, 91 id. 464;

*Lawrence* v. *Cooke*, 104 id. 632; *Roseboom* v. *Roseboom*, 81 id. 356; *Lamb* v. *Lamb*, 131 id. 227; *Schult* v. *Moll*, 132 id. 122; *Lambe* v. *Eames*, L. R. [10 Eq. Cas.] 267.) The will vests in the wife, Mary I. McClure, the realty in fee. (1 R. S. 748, § 1; *Vernon* v. *Vernon*, 53 N. Y. 351; *Parsons* v. *Best*, 1 T. & C. 211; *Kelly* v. *Kelly*, 61 N. Y. 47; *Clarke* v. *Leupp*, 88 id. 228; *Roseboom* v. *Roseboom*, 81 id. 356; *Schult* v. *Moll*, 132 id. 122; *Schermerhorn* v. *Negus*, 1 Den. 448; *Rosevelt* v. *Thurman*, 1 Johns. Ch. 221; *Lovett* v. *Gillinder*, 35 N. Y. 617, 620; *Craig* v. *Wells*, 11 id. 315; *De Peyster* v. *Michael*, 6 id. 467.) There is no residuary clause of any kind in the will of James McClure; the construction placed upon it by the General Term causes intestacy as to the whole estate; such construction violates the rule that the law prefers a construction of a will which will prevent intestacy to one which will permit it, especially where testator by the terms of his will manifests an intention to dispose of all of his estate. (*Lyman* v. *Lyman*, 22 Hun, 263; *Schult* v. *Moll*, 132 N. Y. 122; *Vernon* v. *Vernon*, 53 id. 351–361; *Provoost* v. *Calyer*, 62 id. 545; *Byrnes* v. *Baer*, 86 id. 210–218.) The will of James McClure creates no trust in the widow for the benefit of any of his children or grandchildren. (*Lawrence* v. *Cooke*, 104 N. Y. 632.) The infants and special guardian were properly denied costs by the surrogate on the accounting. (*In re Budlong*, 100 N. Y. 203.)

*Francis H. Woods* for respondents. This is an autographic will of an illiterate man, and it is therefore the duty of the court to search for and give effect to the intention as it is made to appear from the body of the instrument, read in the light of the surroundings and relations of the testator, disregarding as far as it may be technical rules of construction, and also the usual technical meaning of words and phrases, when contrary to the intent as thus disclosed. (*Lytle* v. *Beveridge*, 58 N. Y. 592–598; *Leggett* v. *Firth*, 132 id. 122; *Rood* v. *Watson*, 54 Hun, 85; *Greyston* v. *Clark*, 41 id. 125.) The testator, James McClure, did not intend to give

his wife all his property, to have and to hold the same for-
ever. (*Terry* v. *Wiggins*, 47 N. Y. 515.) The widow is
entitled to a life interest only. (1 R. S. 727, § 47.) This
being a will where real and personal property are disposed of
in the same terms, both go together, and whatever estate was
given to the widow in the personal she is entitled only to the
same in real property. (Schouler on Wills, §§ 511–514.)
Where, as in this case, the controversy is between heirs of the
testator and a stranger to his blood, whose only claim is that
the testator intended to take from his heirs their legal inher-
itance and vest it in one who, but for his will, had no other
claim upon it than her dower interest, and interest as widow,
the claim of the heirs has the advantage in this, that if there
be two equally probable interpretations of the will, that one
is to be adopted which prefers the kin of the testators to
strangers. (*Quinn* v. *Hardenbrook*, 54 N. Y. 86.)

FINCH, J. The testator's will gives to his widow the whole
of his real and personal property either absolutely or for life ;
and which was his real meaning and intention becomes the
single question in the present controversy. The will was
written by himself, upon one of the ordinary printed blanks
prepared for that purpose, and as far as we know, without aid
or advice from other sources. He was a tinsmith by trade,
and had slowly and laboriously amassed a moderate fortune of
about ninety-six thousand dollars in real estate and sixty-eight
thousand dollars of personal property. Nothing in his history
or mode of life indicates that he possessed more than an aver-
age education and intelligence ; and we must not expect to
find in the instrument which he drew the accuracy and preci-
sion of legal experience and training. We may be sure that
he used words in their ordinary and prevailing sense, and
constructed his sentences with the usual ability of an intelli-
gent artisan, but nothing more. At his death, his household
comprised his wife and his son William, the latter of full age, and
the former about sixty-eight. He had two daughters living,
each of whom was married, and five grandchildren who were

all minors and children of two of his deceased sons. They lived with and were supported by their mothers, who had no property of their own and were dependent upon their personal labor for a livelihood. The testator seems not to have contributed to their support and had no great liking for them as the widow intimates in her evidence.

The devise and bequest to her is in these words: "I give and bequeath unto my beloved wife Mary I. McClure all my real estate owned by me of every name and description; also all my personal property of every kind and nature, also my life insurance stocks and mortgages to have and to hold, with full power to collect all rents and income from the same, she to keep in repair and pay all taxes and insurance on the same, with full power to sell any or all such real estate with the consent of my executors should it be thought best for the estate; should she marry again then her right of dower only in my estate. I recommend she appoint a good agent to take charge of my real estate. I also give her discretionary power to give such sums of money to any as she may think prudent of my relatives." That is all there is of the will except that he appointed the widow executrix and Mr. Frothingham executor. There is no mention of children or grandchildren, and not even of the son living with him in the household.

It is quite apparent that there are inconsistent provisions in the testator's disposition of his property. Some of them might possibly be reconciled with an absolute devise and bequest, but two of them cannot be. The provision which purports to confer upon the widow power to sell the real estate devised with the consent of the executors and if it should be thought best for the estate is entirely inconsistent with a conscious intent to vest in her an absolute fee. To that an unrestrained power of disposition is essential and necessarily belongs. The testator well knew the fact. He comprehended what his own absolute ownership of his land was; and that no power to sell it was necessary to be conferred by anybody or from any direction. He understood that the power was his and inherent in his ownership, and if he had supposed that he was

giving a similar ownership to his wife it is not conceivable that he would have solemnly conferred a power of sale which she already had; still less that he would have destroyed the character of the devise by making the devisee's right of disposition dependent upon the consent of the executors and conditioned upon their judgment that it should be "best for the estate." Then too the discretionary power which he confers to give such sums of money as she may think prudent to any of his relatives, is equally inconsistent with a conscious knowledge on his part that he had already given her his whole property absolutely; that she could do as she pleased with it; that she already had power to give what she chose not only to his relatives but to any one else whom she might desire to benefit.

On the other hand these careful and repeated grants of power to sell the real and give away portions of the personal estate are entirely consistent with an intention to vest in the widow a life estate merely. To such an estate a power of sale or authority to give are natural and appropriate, and the restraints which narrow and hamper the power are consistent with the character of the estate granted. Then, too, the further powers and directions which accompany the devise, and which, if not vitally inconsistent with it, are at least superfluous, unnatural and unexpected, become reasonable and have adequate explanation on the theory of a life estate. The testator gives full power to collect all rents and income, and requires her to make repairs and pay all taxes and insurance. Of course he knew if she became absolute owner that she had authority to collect rents and income and did not need that he should specially confer it; that the duty of making repairs and paying taxes and insurance would rest on her in her own interest; and beyond that he further knew that his requirement would have no force or effect, and that she could omit repairs and neglect to pay taxes and that without the least regard to his idle command. On the other hand he may not have known and probably did not know the legal relation of a tenant for life to a remainderman, or that the bare creation

of the estate made his requirements to some extent unnecessary, and so he chose to make her duty sure and clear whatever the legal rule might be.

The interpretation of the will presents to us, therefore, the alternative of cutting off provisions repugnant to an absolute ownership, or allowing them to qualify the estate primarily given. It is quite true that where there is a primary devise so framed as to convey a distinct and definite estate, it will not be cut down by later words which are merely ambiguous and inferential (*Clarke* v. *Leupp*, 88 N. Y. 231), and that if the gift here in question had stopped with the words "to have and to hold," it would have been sufficient to have passed an absolute estate. But it did not stop there, and some of the after words are not at all ambiguous. They are clearly repugnant, for they take away the absolute power of disposition, or they mean nothing. On the other hand, the words of primary devise are not inconsistent with a life estate (*Terry* v. *Wiggins*, 47 N. Y. 515), and the theory of such an estate intended harmonizes and makes consistent all the words of the testator.

An attempt at such harmony is made in behalf of an absolute fee by calling the inconsistent provisions merely words of caution or advice. But a formal grant of a power of sale upon express conditions is something very different from caution or advice, and it is pointed out to us that when the testator meant merely to recommend the appointment of an agent, he used that exact word.

I think that what was in the testator's mind is indicated also by one of his expressions limiting the power of sale which he gave. It was to be exercised with the consent of the executors, and "should it be thought best for the estate." He contemplates the estate as remaining in the widow's hands, and as the subject of care and preservation, and the form of which was not to be changed except upon the judgment of the executors; a direction compatible with and appropriate to a life estate, but singularly inappropriate to an estate in fee, unless it be deemed, what it is not, a mere sentence of advice.

The fact is not to be overlooked that the construction of a

life estate involves a partial intestacy, and that the courts presume against such an intention. But this will clearly and forcibly rebuts that presumption, for it shows that in one emergency the testator did mean and contemplate intestacy to even a greater extent. He says of his wife, "should she marry again, then her right of dower only in my estate." That possible emergency came into his mind and he cut her estate down to a mere dower, leaving the fee undisposed of and consciously committing its devolution to the laws of descent. If he contemplated intestacy in one event and was satisfied to permit its occurrence, by what logic do we say that he was not conscious of and contented with the lesser intestacy following upon the close of the life tenancy?

And so, taking the whole will together, and seeking, as it is our duty to do, to harmonize all its provisions and give them effect, we are led to the conclusion that the widow takes only an estate for life in the real and personal property.

The judgment of the General Term should be affirmed, with costs of both parties in all the courts, payable out of the estate.

All concur.

Judgment affirmed.