HENRY N. SPAAN, HERMAN SPAAN, AND CORNELIUS SPAAN v. JAMES H. ANDERSON AND OERTEL BROTHERS, Appellants.

Wills: CONSTRUCTION: *Creation of remainders.* A will devising testator's real property to his wife, with a general power to
1 dispose thereof, and directing that any portion remaining at her death shall pass to the testator's children, creates a life
4 interest in her, with power of disposing of the property, and contingent remainder in the children, subject to be defeated by the exercise of the power by the wife.

ADVANCEMENTS: *Judgment against heir.* Where a child of the testator receives a portion of such property from the mother
2 by way of advancement, before a judgment against the child
3 becomes a lien on his interest in the land, the portion received by the child must be deducted, in determining his
5 interest in the remaining property, which may be subjected to the payment of the judgment.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

WEDNESDAY, DECEMBER 18, 1901.

ACTION to quiet title by plaintiffs, who claim to be owners of two certain lots of real property in the city of Keokuk, as against defendants, who claim judgment liens on an interest therein alleged by them to belong to one Joseph C. Spaan. Decree for plaintiffs, and defendants appeal.—*Affirmed.*

*B. A. Dolan* and *James H. Anderson* for appellants.

*W. G. Roberts* for appellees.

McCLAIN, J.—The lots in controversy belonged during his lifetime to one John Spaan, the father of plaintiffs and of Joseph C. Spaan, who died seised thereof in 1893, having executed a will, afterwards duly probated, containing the following clauses: "Second. I give, devise, and bequeath to my wife, Nellie Spaan, all my property, both real and personal, during her natural life; and I hereby authorize and empower the said Nellie Spaan to sell and convey any of said property as she may think best. Third. After the death of my said wife, I give, devise, and bequeath all the property remaining at her death to my four sons, Henry N. Spaan, Joseph C. Spaan, Herman Spaan, and Cornelius J. Spaan, to be divided equally between them, share and share a like." Nellie Spaan, the widow of testator, died intestate in 1898, leaving the two lots in controversy undisposed of; and defendants, as judgment creditors of Joseph C. Spaan, whose judgments against him became liens upon real property in the county in which the lots are located in 1894, claim that their lien has attached to a one-fourth interest therein belonging to their debtor, said Joseph C. Spaan. Plaintiffs claim, however, that their said brother Joseph during the lifetime of his mother, Nellie Spaan, and prior to the date when defendants' judgments became liens upon real property, received from her $2,500, in various sums, with the agreement that such amount should be regarded as an advancement to him out of the estate in which he would have a right to participate on her death; that this amount exceeds one-fourth of all his father's property remaining undisposed of at his mother's death; and that subsequently to her death he executed to these plaintiffs, his brothers, a quitclaim deed reciting the receipt by him of such amount by way of advancement, and conveying to them all his interest in the lots in controversy.

Plaintiffs contend that the will of John Spaan should be construed as vesting in Nellie Spaan, his widow,

a fee simple title to all testator's property, including the lots in controversy, and that the money advanced to Joseph Spaan is to be deducted from his interest in her estate, leaving no interest in him subject to defendants' judgments; and, further, that even if the will gave to the widow only a life estate, so that Joseph C. Spaan's interest was that of an heir to his father in a contingent remainder, nevertheless the advancement to him out of the property in which he and his brothers had a contingent interest before defendants' judgment liens attached to the interest of said Joseph is to be taken into account in determining the amount of his interest, which would result in leaving nothing in him to which defendants' judgments could attach.

It is well settled that the general lien of a judgment creditor upon the lands of his debtor is subject to all equities existing against his interest in favor of third persons at the time when the judgments become liens. *Rice v. Kelso,* 57 Iowa, 115. A judgment is a lien only on the interest of the judgment debtor. *Churchill v. Morse,* 23 Iowa, 229; *Brebner v. Johnson,* 84 Iowa, 23. The lien of the judgment creditor on the debtor's interest as heir or devisee does not take priority over advancements, and, if at the time his share in the estate would otherwise vest in him he has already received such share by way of advancement, the lien of the judgment does not attach. *Liginger v. Field,* 78 Wis. 367 (47 N. W. Rep. 613); *Steele v. Frierson,* 85 Tenn. 430 (3 S. W. Rep. 649). the lien is subject to advancements made by her to him. And the lien is subject to advancements made by her to him; and, furthermore, even if Joseph took as heir of his father, John Spaan, his interest in such lots on which defendants can claim a lien will be subject to any equitable claim which may arise in the settlement and distribution of his father's estate. We think there is no doubt that under the will of John Spaan his widow took a life estate only, with the additional general power of disposal of the entire estate, and that his sons became vested with

a contingent remainder in any portion of the estate remaining undisposed of at the time of the widow's death. This is not a case where the power of disposal determines the extent of the interest devised. Here it is expressly stipulated that the devise to the widow is for life, and the power of disposal is added thereto as an additional and independent power; and there are no decisions in this state holding that a grant of such a power, in addition to the creation of a life estate, enlarges the life estate to a fee simple. The cases on this subject have recently been so fully reviewed by this court that it is not necessary to discuss them. See *Hambel v. Hambel,* 109 Iowa, 459; *Law v. Douglass,* 107 Iowa, 606; *In re Proctor's Estate,* 95 Iowa, 172. While, perhaps, this court has never expressly held that absolute power of disposal, without limitation as to the purpose to which the property may thus be appropriated, does not enlarge the express grant of a life estate so as to convert it into a fee simple, yet there are no cases inconsistent with this conclusion; and the authorities in other states fully recognize the principle that to the devisee of a life estate this unlimited power of disposal may be added without affecting the nature of the estate devised. *Ernst v. Foster,* 58 Kan. 438 (49 Pac. Rep. 527); *Evans v. Folks,* 135 Mo. 397 (37 S. W. Rep. 126); *Collins v. Wickwire,* 162 Mass. 143 (38 N. E. Rep. 365); *Robeson v. Shotwell,* 55 N. J. Eq. 318 (36 Atl. Rep. 780).

Treating this interest of Joseph C. Spaan in the two lots in controversy as a vested interest under his father's will, the question is whether the advancement made to him by his mother prior to the attachment of defendants' liens operated to extinguish such interest, so as to leave nothing to which the liens could attach. The term "advancement," in this view of the case, is, of course, not used in its strict sense. The doctrine of advancements is only applicable with reference to property not disposed of by will. *In re Lyon's Estate,* 70 Iowa, 375. And, of course, anything paid by the widow to the sons out of their

father's estate could not, in any view, be regarded as an advancement by the father. But the situation of the parties was this: The widow had the right to dispose of the estate so as to partially or completely extinguish the contingent remainder given to the sons by the will. She, no doubt, could have converted a part of all of the property into money, and made a gift of the proceeds to one of the sons, and the others could probaby not have held him accountable therefor. On the other hand, so far as she converted the property of the testator in which she had a life estate, with power of disposal, into funds or into other property which remained undisposed of by her at the time of her death, no doubt such proceeds or property received in exchange would still have passed to the sons under the contingent provision in their behalf. What the widow did was to convert some of the property into money, which she paid to Joseph, and to directly transfer to him a promissory note of a third party belonging to testator's estate at the time of his death; and this she did, according to the testimony, not by way of gift, but with the express provision that it should be treated as an advancement out of his interest in the estate, which should be left undisposed of at her death. In other words, she waived her life estate and her power of disposal with reference to so much of the estate as was given to Joseph, and required that he should accept it as a portion of the share in the estate which he would become entitled to enjoy after her death. Such a disposition, made by agreement with all the heirs, would unquestionable have been a valid partition before hand, which would be binding; and, although it does not appear that there was any express consent on the part of the other heirs to this form of distribution; yet, when the other heirs ratified and acquiesced therein, we can see no good reason for denying to the arrangement between the widow and Joseph the effect which it was, as between them, intended to have. The case of *Foltz v. Wert,* 103 Ind. 404 (2 N. E. Rep. 950), is very like this in its facts, and we

quote the following language used in that case as pertinent here: "To all intents and purposes, money and property thus delivered to the sons by the mother was so much advanced to them out of the property, the use of which she might have continued to enjoy during her lifetime. The primary purpose of the testator was to make ample provision for his widow during her lifetime, and to effect an equal division for his real and personal property between his sons at her death. The widow, to aid her sons, surrendered her rights to the personal estate on the consideration that the sums received by each should be treated as advancements, and the shares equalized in the final partition of the real estate. This agreement accomplished the purpose of the testator substantially, was mutually beneficial to the sons, and was capable of being specifically enforced after it was so far executed as that the mother had surrendered, and the sons received, the personal property under it."

These views seem to us entirely satisfactory, and the decision of the lower court is AFFIRMED.