In re the Will of LARS WEIEN, Deceased, M. J. LARSON, Appellant.

**Wills:** CONSTRUCTION.  Of two modes of construing a will, the one which will prevent either partial or total intestacy will be preferred.

**Same:** DEVISE IN FEE.  A will which gives the wife all of testator's estate, real and personal, to be used by her and disposed of during her natural life precisely the same as the testator might have done if living, with full power to sell, exchange, invest and reinvest, and to distribute the same by gift or otherwise among his children as she may deem proper, according to her own judgment, invests the wife with absolute title to the property; since the estate devised is not limited to one for life, the power of disposal is full, adequate and covers all methods known to the law, and is not merely an added power, there being no residuary clause or attempt to dispose of any remainder.

Weaver, J., dissenting.

*Appeal from Shelby District Court.*—HON. O. D. WHEEL-
ER, Judge.

FRIDAY, JULY 10, 1908.

REHEARING DENIED, TUESDAY, OCTOBER 27, 1908.

ACTION to construe the will of Lars Weien, deceased.
M. J. Larson, a son of the deceased, appeals from the
decree of the trial court holding that the widow took an
estate in fee under the will.—*Affirmed.*

*Byers, Lockwood & Byers,* for appellant.

*Cullison & Yackey,* for appellee.

DEEMER, J.—Lars Weien made and executed a will,
the body of which was in the following words:

In the name of the Lord Amen. I, Lars Weien,
of the township of Fairview, county of Shelby and State
of Iowa, being of sound, disposing mind and memory, and
of full age, do hereby make, publish and declare this my
last will and testament, hereby revoking all former wills
made by me.
First. I direct that my body be decently buried in
a manner suitable to my circumstances in life, as to such
worldly estate as it hath pleased God to bestow upon me,
and I dispose of the same as follows: First. I direct
that my executors shall pay my funeral expenses and
all my just debts as speedily as possible, after my de-
cease, out of my personal property if the same be sufficient
therefor, it being my express desire that no charge be
made against any real estate I may be possessed of, until
my personal property be first exhausted. Second. I give,
devise and bequeath to my beloved wife Mette Pethrine
Weien, all my estate, both real and personal, in whatever
it may consist or wherever it may be situated at my de-
cease, to be by her used and disposed of during her natu-

ral life precisely the same as I myself might do were I living; and giving my wife full power to sell, exchange, invest and reinvest the same, in the same manner I might do if living and to distribute the same by gift or otherwise among my children. as she shall deem best and proper, and 'to allot the same among my children by will after her decease according to her own best judgment and discretion.

On the same day, and evidently as part of the same transaction, Mette Pethrine Weien, wife of said Lars Weien, made and executed a will in the same language and form, except that she is named as testatrix, and her husband as the beneficiary. Thereafter the wife died, leaving no property or estate. Later the husband died. After his death both wills were duly admitted to probate, and one George Haward was in each instance appointed administrator with will annexed. In due time Haward presented his final report as administrator of the estate of Lars Weien, showing a balance in his hands for distribution, after paying all claims, of $1,375.65. He also showed that the persons listed as heirs of Lars Weien and heirs of Mette Pethrine Weien were identical, but that one M. J. Larson had appeared, claiming to be a son and heir of the husband, but not of the wife. Of the right and claim of Larson, the administrator being unable to speak with knowledge, he asked that it be determined by the court. Larson entered an appearance to the proceeding, and offered evidence in support of his claim to be an heir, and of his right to share in the distribution of the estate. After hearing the evidence the court found that said Larson was a son and heir of Lars Weien, but concluded, as a matter of law, that the effect of the will was to devise an absolute estate, in all of said testator's property, to his wife, and although she died first, yet, by virtue of the statute (Code, Sec. 3281) the devise inured to the benefit of her heirs alone, and the

claimant, not being one of her heirs, was not entitled to share in the estate. From this decision Larson has appealed.

There is no doubt under the evidence that appellant is the son of Lars Weien, and as such is entitled to a part of the property of which he died seised, unless the same was disposed of by the will, heretofore set forth at length. The sole question in the case then is, does the will devise an estate in fee to testator's wife, or did it simply transfer a life estate, with remainder over to testator's heirs? At the outset it is well to note that the will contains no residuary clause, and if appellant is entitled to anything, it is because there was a remainder undisposed of by will, in which he is entitled to share. This is important, for the reason that of two modes of construction that is to be preferred which will prevent. either *partial or total intestacy.* *Ross v. Ayrhart,* 138 Iowa, 178; *Given v. Hilton,* 95 U. S. 591 (24 L. Ed. 458); *Higgins v. Dwen,* 100 Ill. 554; *Cate v. Cranor,* 30 Ind. 292; *Trusty v. Trusty,* (Ky.) 59 S. W. 1094; *Dole v. Johnson,* 3 Allen (Mass.), 364; *Saxton v. Webber,* 83 Wis. 619 (53 N. W. 905, 20 L. R. A. 509).

1. Wills: construction.

The contention made for appellant is that the will devised but a life estate to testator's widow, and that the remainder was left undisposed of, and passed to testator's heirs. Going back now to the testament, it will be noticed that it in express terms gives the wife (widow) all of the testator's estate, both real and personal, to be used by her and disposed of during her natural life precisely as he might do if living. There is no limitation here of a life estate, as in many of the cases cited and relied upon by appellant. Counsel, however, seize upon the words "to be used and disposed of during her natural life," and claim that these limit the estate to the widow for life.

2. Same: devise in fee.

But it will be noticed that these are followed by other provisions, to wit, "precisely the same as I myself might do were I living," and by other words giving her power to give or to will the entire property according to her own judgment and desires. If the widow could use and dispose of the entire estate precisely as the husband might do if he were living, she undoubtedly held a fee, although the will also says that she could do so during her natural life. Of course she could do nothing with the property after her death; and there is no room to say that she could not give the property away or will it after her death, for these powers are also expressly given. There is no reservation whatever upon her powers of disposition. By the express terms of the will she had the same power as the testator might have had had he survived, and nothing is left to inference. This so-called power she was to exercise in her own right, and not by reason of appointment from her husband. Whatever she might do with the property she was to do as if it were her own. She had full power to use and dispose of it, and was not limited in any way by the terms of the will. She had the power to use, to sell, to give, and to will; and if anything be lacking, we have failed to discover it. Moreover, there was no attempt to dispose of any remainder or of anything which might be left upon the death of the widow. It is only by the barest inference that it can be said that her title was of a life estate, and this is negatived by the other provisions of the will, giving her full power over all the property in her own right, to be disposed of according to her judgment and discretion. Manifestly, something more than a life estate, with an added power of disposition for and on behalf of the testator, was devised. What she was to do was for herself and of her own, and not for and on behalf of her husband. In none of the cases relied upon by appellant do we find any such powers as the widow

had under this will. In most, if not all of them, there was an express grant of a life estate, with added powers of disposition, and not, as here, of the entire estate with all powers of disposition, not as a separate estate or power, but as a part of the estate granted. Whatever of confusion there may be in our previous and recent cases may be explained and reconciled with these rules in mind. This distinction is clearly pointed out in *Law v. Douglass,* 107 Iowa, 606, and in many other cases following it. See, also, *Burbank's Will,* 69 Iowa, 378; *In re Barrett's Will,* 111 Iowa, 570; *Hambel v. Hambel,* 109 Iowa, 459.

In *Law v. Douglass, supra,* it is said: "Having given her the property with unlimited power of disposition, nothing remained to be disposed of to another." That this was testator's intent appears from the fact that he did not think he had anything left; for he did not undertake to dispose of a remainder, nor did his will contain the usual residuary clause to cover anything which might be undisposed of. This is not a case where a limited estate is granted, with power of disposition added as a subsequent gift, but is of an absolute estate, with full power of use and disposition. This distinction is clearly pointed out in *Van Horne v. Campbell,* 100 N. Y. 287 (3 N. E. 316, 771, 53 Am. Rep. 166), and with this in mind all of our recent cases, with possibly one exception, may be harmonized. This matter is also explained in *Steiff v. Seibert,* 128 Iowa, 746. See, as further supporting our conclusions, *Meyer v. Weiler,* 121 Iowa, 51; *Luckey v. McCray,* 125 Iowa, 691. It is useless to attempt a review of our own cases, or to quote therefrom in support of the rules here announced; and it goes without saying that authorities from other States are of no importance whatever when it appears that the decision is ruled by our own previous pronouncements upon the very question at issue. The salient points in the case are, first,

that the estate devised is not limited to one for life in the first taker; second, that the power of disposition is full and adequate, and covers all methods known to the law; third, that this is not an added power, but relates to the estate granted to the first taker, and the disposition is not of testator's estate as by appointment, but of the estate granted to the wife; and, fourth, there is no residuary clause, and no attempt made to dispose of any supposed remainder. The devisee disposed of the estate by her will, as she was authorized to do, according to her own judgment and discretion, and not according to the will of the testator, save as she was given full power of disposition in her own right and of her own estate. Surely if she had the right to dispose of the property as her own, and was disposing of her own and not the estate of her husband, she held a fee; for without it she could not pass an estate as her own. If a life estate only was granted, she had no power to will it to any one; and, if she was given power to will to whom she might see fit, she certainly must have had something to will. As further supporting these views, see, *Simpkins v. Bales,* 123 Iowa, 62; *Luckey v. McCray,* 125 Iowa, 691; *Baldwin v. Morford,* 117 Iowa, 72; *Channell v. Aldinger,* 121 Iowa, 297. With the propositions hitherto cited in mind the conclusion necessarily and inevitably follows that the widow took an estate in fee under her husband's will, and that nothing remained for her heirs.

The decree is correct, and it is *affirmed.*

WEAVER, J. (dissenting).—I sincerely regret the confusion which has for some years existed in the decisions of this court on questions involving the construction of wills. The effect of the majority opinion is, in my judgment, to make that confusion "worse confounded," and engender an infinite amount of hairsplitting in the future to preserve our record for judicial consistency. The right of every person, subject to statutory regulation,

to dispose of his estate by will is one of the most valuable and most sacred known to the law. Generally speaking, the law has guarded that right with jealous care to enable the property owner to transmit his property to such persons, in such manner, and subject to such regulations as he may see fit to prescribe, so long as his act or purpose is not obnoxious to good morals or public policy. One of the most creditable manifestations of human nature is seen in the constant effort of the dying man to provide for the comfort of his surviving wife and, after that, the welfare of his children. Probate records are full of wills in which this legal and just result is sought to be obtained by conferring upon the wife a life tenancy of the estate, with remainder over upon her death to the children of the testator. In many instances the desire to relieve the wife of annoying limitations upon the use of the property, and to insure her against every contingency of want under all conditions, leads to provisions by which she is given full power to sell and dispose of the fee, and make the remainder over effective only in that part of the property, if any, which she leaves undisposed of at her death. In other cases the wife, though taking but a life estate, is further protected by being given an added power to appoint by will the person or persons who shall receive the fee. This power is sometimes given without restriction, and in other cases the appointment is limited to persons of a designated class. There is no law anywhere among English-speaking nations which condemns such a testamentary disposition of an estate. On the contrary, it is the central principle of the law of wills that, the legal intent of the testator being ascertained from the language of the devise or bequest, the court will confirm and enforce it accordingly, without regard to merely technical rules of construction. With a rule so simple in statement, so clear to the ordinary comprehension, the justice and righteousness of which is so unquestionable as to be axio-

matic, it is not a little strange that we find here and there
a court, more frequently in the past than at present,
manifesting a tendency to defeat its operation and thwart
the intention of the testator by giving his language a
forced and unnatural construction, and imposing upon
it a legal effect which is destructive of the estate which
he sought to create.

But these exceptional precedents have nowhere been
sufficient to arrest the general tendency of the courts to
observe and effectuate the will of the testator according
to its clear intent, until, by the majority opinion in this
case, this court surrenders itself to their reactionary in-
fluence. Moreover, as I shall demonstrate, the holding is
directly at variance with our own oft-repeated decisions,
and with the clearly expressed views of nearly every mem-
ber of this court. It is idle for us to assert that by the
instrument before us the testator intended to devise to
his wife the fee of his estate. There is nothing in the
record to indicate that he or the person who drew the
will was not a man of ordinary intelligence, and if he
intended to confer upon her the fee of the property, it
was easy enough to say so in explicit terms. The words
employed in the devise are those in ordinary use, and
wholly unobscured by expressions or phrases of technical
or doubtful construction. Reduced to briefer terms, its
provisions are as follows: First. It gives the estate to
his wife to be by her used and disposed of, during her
natural life, as freely as the testator might do if alive.
Second. It gives her the power to sell, exchange, in-
vest, and reinvest the proceeds of the property. Third.
It gives her the power to distribute the estate among the
testator's children, by gift during her lifetime, or by will
at her death, in such proportion as she may decide.

To hold that such a devise gives to the wife absolute
fee to the property is to disregard a multitude of preced-
ents, including our own, and to say to every person de-

siring to make a will that it will be given force, not according to the clear and natural meaning of the lanluage employed, but according to the meaning which this court may, in its wisdom or caprice, arbitrarily place upon it. That this is stated none too strongly let us turn to a few of our cases, and compare them with what we are now made to say by the majority opinion. For example, that opinion selects, for the corner stone of its argument, the unlimited power given to the wife to sell, exchange, and dispose of the property, and to invest and reinvest the proceeds as she may see fit. Because of this unlimited power of disposal, we are told the estate must be a fee. To quote from the opinion: "If the widow could use and dispose of the entire estate precisely as the husband might do if he were alive, she undoubtedly held a fee." This, I must beg to say, is palpable *non sequitur*. An unlimited power of disposal is not inconsistent with a life estate in the same person. For this proposition I have the support of the learned writer of the majority opinion. See *Webb v. Webb,* 130 Iowa, 460, where he says: "But he [the testator] had a right to give but a life estate therein, with remainder over, if he saw fit, and also to confer upon the wife power of absolute disposition. . . . Under our holdings the widow took but a life estate, with unlimited power of disposition added, as a separate gift; and, if she failed to exercise this power, the remainder over upon her death passed to the children. There is some confusion in our holdings on this subject, but the later cases announce the rule above stated." And this "power of absolute disposition"—"unlimited power of disposition"— which was there affirmed by an undivided court, rested upon no stronger foundation than a mere inference from the fact that, after giving a life estate, the will undertook to direct the disposition of "what is left." That decision was handed down but two short years ago. If

such was the law in April, 1906, and the power of un-
limited disposition was then consistent with a life estate,
upon what theory do we now say that the devisee of such
power "undoubtedly holds a fee?" In *Law v. Douglass,*
107 Iowa, 606, Mr. Justice Ladd, after a learned and
exhaustive discussion of the question, approved the doc-
trine that the gift of a life estate will not be converted
into a fee merely by reason of there being "coupled with
it the power of disposition, however general or extensive."
That opinion was concurred in by Justices Deemer, Rob-
inson, and Waterman. Now, power to "sell, exchange,
and dispose," as provided in the will before us, would
seem to come well within the limits of "however general
or extensive," and not to be visibly in excess of "power
of absolute disposition" or of "unlimited power of dis-
position." But let us continue the examination. In 1904
the appeal in *Simpkins v. Bales,* 123 Iowa, 62, presented
for our consideration a will, which gave to the testator's
wife "all my estate both real and personal to be used and
disposed of as seemeth best to her during her natural life;"
words which differ in no essential respect from those
found in the will now being considered, except in the
added power here given to appoint by will the persons
to succeed to the remainder. In that case the opinion
by Justice Ladd, concurred in by the entire court as now
constituted, reapplied the rule quoted from *Law v. Doug-
lass, supra,* and held that, although the widow took but
a life estate, her deed to another conveyed the fee. In
*Spaan v. Andersen,* 115 Iowa, 121, the opinion by Jus-
tice McClain, concurred in by the entire court, holds that
the power given the widow "to sell and convey any of
the property as she may think best" did not have the
effect to convert the life estate into a fee and declare
that none of our cases are inconsistent with the conclu-
sion that such general and unlimited power may be added
to a life estate without converting it into a fee. In

*Podaril v. Clark,* 118 Iowa, 264, Justice McClain writing the opinion, we had a will in which the added power was in much the same words as were used in the *Spaan* case, except there was entire failure to provide for the disposition of the remainder of the estate after the death of the wife, and it was there held, Justices Bishop and Deemer alone dissenting, that, notwithstanding the broad power given "to sell or convey the same to whomsoever she might see or think best to do during her lifetime," and notwithstanding the failure to provide directly or indirectly for the remainder, the wife took a life estate only. Still again in *Steiff v. Seibert,* 128 Iowa, 736, Justice McClain again writing the opinion, the question arose upon a will in which the gift to the wife is couched in broader and more sweeping terms than in the will before us. The devise to the wife was of the entire estate, both real and personal, during her lifetime to "use said property as her own as long as she may live and that she dispose of the same either principal or interest as she may choose. And I hereby authorize her, without an order from the court, to sell and dispose of such property as she may deem fit, and to execute conveyances thereof. I also hereby authorize her to dispose of any part of said property, by gift, or by will, or otherwise, as absolutely as she might do were it her own." Can it be said in fairness or reason that the power of disposition thus conferred is more full or complete than the power in the will now before us? On the contrary, it needs but little examination to show that it is much greater. There the wife was empowered to dispose of the property, by gift or by will, to whomsoever she might see fit, even though she should confer the estate upon an entire stranger to the family; but in the will now in hand the power vested in the wife to give away the property or to dispose of it by will, can be exercised only in favor of the testator's children. We need take no further time upon the

misleading assumption that, because the devisee of an estate under a will is given unlimited power to dispose of the property, it vests the entire fee in the first taker. By repeated decisions, as I have shown, we are thoroughly committed to the opposite conclusion. To the same effect is the whole current of case law in other States. *Collins v. Wickwire,* 162 Mass. 143 (38 N. E. 365); *Robeson v. Shotwell,* 55 N. J. Eq. 318 (36 Atl. 780); *Home v. Lippardt,* 70 Ohio St. 261 (71 N. E. 770); *Skinner v. McDowell,* 169 Ill. 365 (48 N. E. 310, 61 Am. St. Rep. 183); *Jenkins v. Compton,* 123 Ind. 117 (23 N. E. 1091; *Stuart v. Walker,* 72 Me. 146 (39 Am. Rep. 311); *Brockley's Appeal* (Pa.), 4 Atl. 216; *Wooster v. Cooper,* 56 N. J. Eq. 759 (36 Atl. 281); *Jones v. Jones,* 66 Wis. 310 (28 N. W. 177, 57 Am. Rep. 266); *McCullough's Adm'r v. Anderson,* 90 Ky. 126 (13 S. W. 353, 7 L. R. A. 836).

The next reason assigned by the majority for its opinion is said to be that, after the provision for the benefit of his wife, the testator evidently "did not think he had anything left, for he did not undertake to dispose of the remainder, nor did his will contain .the usual residuary clause to cover anything which might be left undisposed of." Let us see. If I read the will aright, a remainder is provided for. After making provision for his wife's life use and enjoyment of the property, the testator confers upon her the power to distribute the remainder among her children. In other words, his children are by the will given the remainder at the death of the wife, subject only to her power to provide, not the kind or quality of their estate, but the shares or proportions in which they shall take it. She had no authority or power to give or devise the property to any other person or class of persons, and if she undertook so to do, or make a distribution which ignored any one or more of the testator's children, her act would be void. *Clay v. Small-*

*wood,* 100 Ky. 212 (38 S. W. 7); *Shannon v. Pickell,* 41 Hun, 637; *Stableton v. Ellison,* 20 Ohio St. 527; *Neilson's Estate,* 17 Wkly. Notes Cas. (Pa.) 158; *Knight v. Yarborough,* Gilmer (Va.) 27; *Thrasher v. Ballard,* 35 W. Va. 524 (14 S. E. 232). It follows that if she died without executing the power of designating the shares to the several children in the remainder of their father's estate, they succeed to such remainder in equal shares, not as heirs of an undevised remainder, but as devisees under the will. *Reid v. Reid,* 25 Beav. 469; *Smith v. Floyd,* 140 N. Y. 337 (35 N. E. 606); *Cruise v. McKee,* 2 Hed. 1; *Woodcock v. Renneck,* 4 Beav. 190; *Madison v. Andrew,* 1 Ves. 559; *Adams v. Mason,* 85 Ala. 452 (5 South. 219); *Millikin v. Welliver,* 37 Ohio St. 460.

The argument against the existence of a life estate, drawn from the absence of a residuary clause, is clearly unfounded, for the will by its express terms disposes of "all of the estate, both real and personal, in whatever it may consist or wherever it may be situated," first to the wife and after her death the remainder to his children. In other words, having devised his entire estate to designated beneficiaries, there could be no residuum, and a residuary clause could have had no effect, except to involve in confusion a will otherwise clear and unambiguous. Again, it is said that the will does not attempt to devise an estate for life. If this is true, then I concede the correctness of the majority opinion, for the rule is well established that if a general or indefinite estate be devised, and this is followed by a gift of unlimited power of disposition, the devise amounts to a fee, but it is no less well established that, if an estate for life is given, no added power, however extensive, will make the devise anything more than a life estate. But the assertion that the will does not attempt to devise a life estate is inexplicable and indefensible, unless we are authorized. to

read out of that instrument its most obvious purpose and intent. The words "I give, devise and bequeath to my wife Mette Pethrine Weien all of my estate  .  .  . to be by her used and disposed of during her natural life" set forth and describe the entire estate devised to her. Every word that follows the quoted language, having any reference to the wife, designates and deliminates the power given her with reference to the property thus devised. If the second paragraph of the will does not in explicit terms provide a life estate with added power, then it is not within the scope of human ingenuity to frame such a devise in terms so apt or unequivocal that it may not be destroyed by the same forced methods of construction. As a court of last resort, we possess the dangerous power to disregard all canons of construction, and override all rules of language, and to say that white means black, and *vice versa,* but I must be permitted to say that it is a power more honored in disuse than in exercise. The language of the will is so clear in itself as to need no aid from precedent, but it may not be unprofitable to note the view of the leading cases. For instance, in *Burleigh v. Clough,* 52 N. H. 267 (13 Am. Rep. 23), the gift to the wife was "to her use and disposal during her natural life," being almost the precise form of expression used in the will in the present case. In *Wiley v. Gregory,* 135 Ind. 647 (35 N. E. 507), it was to the wife "to be and remain hers during her natural life to use, enjoy and dispose of as she may desire." In *Bowser v. Mattler,* 137 Ind. 649 (35 N. E. 701, 36 N. E. 714), it was to the wife "to be hers without any interference from anybody for the space of her lifetime. It shall be hers in the full sense of ownership, even so far that she is empowered to sell, mortgage, or divide the same." In *Taylor v. Bell,* 158 Pa. 651 (28 Atl. 208, 38 Am. St. Rep. 857), she was given "the life use as she may deem best for her own advantage, and

at her death if any remain it is to be. equally divided between my children." See, also, *McClure's Will*, 136 N. Y. 238 (32 N. E. 758); *Kent v. Morrison*, 153 Mass. 137 (26 N. E. 427, 10 L. R. A. 756, 25 Am. St. Rep. 616); *Robeson v. Shotwell*, 55 N. J. Eq. 318 (36 Atl. 780); *Johnson v. Johnson*, 51 Ohio St. 446 (38 N. E. 61); *Chase v. Ladd*, 153 Mass. 126 (26 N. E. 429, 25 Am. St. Rep. 614); *Mansfield v. Shelton*, 67 Conn. 390 (35 Atl. 271, 52 Am. St. Rep. 285).

In our own cases, as will be seen by those to which I have already called attention, language of the same general purport has received like construction. Still, again, we are told by the majority that the devise should be construed as a fee, because "the power of disposition is full, absolute, and adequate, and covers all methods known to the law." Again it is said that "the devisee disposed of her estate, as she was authorized to do, according to her own judgment and discretion, and not according to the will of the testator, save as she was given full power of disposition covering all methods known to the law," or to "dispose of the estate according to her own judgment and discretion, and not according to the judgment of the testator." But, as I have shown, her power to affect the estate by will is expressly limited to the apportionment of the remainder among the testator's children. This limitation of the power of appointment is one of the well-defined and often recognized tests by which the devise of a life estate with added power is differentiated from a fee arising by implication from the nature and extent of the power conferred, not that unlimited power of disposition is necessarily inconsistent with a life estate in the devisee, but because a limitation upon the power of disposition is absolutely inconsistent with a fee. See *McClure's Will*, 136 N. Y. 238 (32 N. E. 758); *Crew v. Dixon*, 129 Ind. 85 (27 N. E. 728); *Henderson v. Blackburn*, 104 Ill. 227 (44 Am.

Rep. 780); *Welch v. Bank,* 94 Ill. 191; *Collins v. Carlisle,* 46 Ky. 13; *Koenig v. Kraft,* 87 Ky. 95 (7 S. W. 622, 12 Am. St. Rep. 463); *Wright v. Wright,* 41 N. J. Eq. 382 (4 Atl. 855).

In *Welch v. Bank, supra,* the testator gave his wife "independent and uncontrollable use and benefit" of his estate, with power to divide the remainder among his children; and, in construing the will, the court says that the power given to divide among the children "strongly negatives a purpose, on part of the testator, to authorize her to dispose of the estate in any other manner, or to any other persons." The further observation in the majority opinion that, "if a life estate only was granted, she had no power to will it to any one, and if she was given power to will it to whom she might see fit, she certainly had something to will," demonstrates, it seems to me, not only the failure of the majority, already noted, to notice the explicit terms of the will, but an entire failure to consider or give effect to the rules of law governing testamentary powers. As I have already pointed out, the iterated and reiterated assumptions of the majority that the will gave the wife power to devise the property to whom she might see fit is incorrect. She is given no power to devise any part of the property, but simply the right to direct the distribution among the testator's children, who take as the devisees and legatees of their deceased father, and not under the will of the widow. A testamentary power, however broad or extensive, is just what its name implies—a power or authority, and not an estate, nor does it imply ownership. *Burleigh v. Clough,* 52 N. H. 267 (13 Am. Rep. 23); *Eells v. Lynch,* 8 Bosw. (N. Y.) 465.

If the power be special or limited, it may not be exercised only to the extent prescribed in the gift or grant, and in favor of the person or class for whose benefit it was conferred. Any attempt to control the property,

in disregard of the limitation thus imposed, is a mere nullity. *Wright v. Wright,* 41 N. J. Eq. 382 (4 Atl. 855).

In the cited case the provision for the wife's benefit was in these words: "I devise and bequeath all of my property, both real and personal, to my wife, to use or dispose of in any manner she may think proper during her lifetime and at her death, may by will dispose of the same between my children and grandchildren as she may think proper." It will be observed that, though couched in somewhat more concise terms, this devise is, in every essential respect, a complete parallel of the one we are now considering. There, also, as in the present case, the wife sought by her will to dispose of the property in disregard of the restrictions in the devise to herself. The court construes the husband's will as giving the wife a life estate, and conferring no authority to dispose of the property by will, except to the persons or classes mentioned in the devise. On this subject the court says: "But she has not made the appointment in accordance with the terms of the power. She was to appoint the property among the donor's children and grandchildren as she might deem proper. Under such provision both children and grandchildren take. . . . Under the terms of her husband's will the testatrix was not at liberty to exclude any of his children or grandchildren. The power was not an exclusive one. While she had the discretion as to the shares to be given them, she was bound to give each child and grandchild a portion." To the same effect see *Huston v. Craighead,* 23 Ohio St. 198. But, even if the power given the wife in the present case were as broad and general as the majority incorrectly assume, it still remains a power, and not an estate, and, as I have shown, not inconsistent with her life tenancy. We have ourselves so held where a will gave the life tenant a power to dispose of the property, "by gift or will, as absolutely as she might do were it her own." *Steiff*

*v. Seibert, supra.* See, also, *Ball v. Dampman,* 69 Md. 390 (16 Atl. 16, 1 L. R. A. 545); *Fairman v. Beal,* 14 Ill. 244; *Pulliam v. Byrd,* 2 Strob. Eq. (S. C.) 134.

The attempt made in the opinion to neutralize the effect of the testator's words "during her natural life," by saying: "Of course she could do nothing with the property after her death"—is at best a play upon words. It is, of course, literally and inconveniently true that human activity ceases with life. We have the word of the wisest man of the ages that: "There is no work, nor device, nor knowledge, nor wisdom in the grave whither thou goest." But if the words "during her natural life" are not a proper expression for the limitation of a life estate, as well as for a limitation upon the added power of disposition given to the life tenant, then I freely confess my ignorance of our mother tongue. While the power of disposition by the fee owner or life tenant ends with life, the will and purpose of the former, expressed or formulated in his lifetime, may be made operative and effectual after his death. He may, under our statute, create an estate to begin in the future. He may provide for remainders, and for their extinguishment, and in numerous ways may direct or restrict the course which the title to his property shall take after the term of his natural life. Not so with the life tenant. His right is a right of mere use, occupancy, or enjoyment which, in the very nature of things, ceases with his life. He can in no manner or degree control or direct the course of the property or any interest therein after his death, except it be in the exercise of some power of appointment conferred upon him in express words, or by necessary implication, in the grant or devise by which the life estate was created. It is therefore not a meaningless or redundant clause of the will which limits to her natural life the power of the life tenant to dispose of the property.

To one other feature of the opinion I desire to enter

a respectful protest. After the discussion, which, as I have shown, misapprehends the express language of the will, and announces a conclusion which, to my mind, discredits and unsettles not less than a half dozen of our cases decided within the last few years, we are told that the rules here affirmed may be harmonized with all of our recent cases, "with possibly one exception," but were not informed as to the identity of the exception. Why should not the one exceptional case selected for discredit be explicitly pointed out? We have numerous recent cases on the subject, and when we reach a conclusion that any of them is wrong, it is due to the profession, and to the people generally, that we frankly and unequivocally over-rule it.

My abiding conviction that the conclusion of the majority is erroneous in principle, and destructive of the fundamental right of testators and devisees to have wills construed according to their plain intent, is my only excuse for this dissent.

I think the judgment appealed from should be *reversed*.