HOPKINS *et al.* v. GRIMES *et al.*

1. CONSTRUCTION OF WILLS. The object of all rules for the construction of wills is to discover the intention of the testator; and this should be gathered from the entire instrument.

2. SAME: HOMESTEAD. The word "homestead," when used in a will before it acquired a technical meaning by statute, held to embrace all the land which was appurtenant to, and which was used and considered by the testator as making up the farm which he cultivated, and upon which he resided.

3. SAME: EVIDENCE. That the testator used and considered the lands in controversy as a part of his 'homestead, may be shown by evidence *aliunde*.

4. CONSTRUCTION. Wills will be so construed as to embrace all the testator's property, if the words used by any fair interpretation, or allowable implication, will embrace it.

### *Appeal from Des Moines District Court.*

### FRIDAY, OCTOBER 17.

ACTION of right to recover the undivided three-fourths of the fractional northwest quarter of section nine, township sixty-nine, north of range two, west. Both parties claim through Enoch Wade, the plaintiffs as heirs-at-law, the defendants as purchasers from the executors under the will. Judgment for defendants and plaintiffs appeal.

*Hall, Harrington & Hall* for the appellant. ·

In the trial below, after plaintiffs had rested their case, defendants proposed to introduce the will, and to show that in his lifetime the testator treated and considered the land in controversy as a part of his homestead; and other parol testimony tending to show that the testator, in said will, intended to devise the land in question, under the above description. To this evidence the plaintiffs objected, for the reason that the will was clear from all ambiguity, and should be construed as to the description of land, upon the face of the will, without the aid of extrinsic evidence. But the court overruled the objection and allowed the evidence to be introduced. To this ruling an exception was taken, and the same is now assigned for error. 1 Greenl. Ev., § 387, *et seq.*, §§ 290, 291; 3 Metc., 423; 11 John., 210; 5

Taunt., 321; 1 Jarm. Wills, 359 (marg.), *et seq.*; 3 Taunt., 147, 152; 2 Sneed (Tenn.), 387.

The plaintiffs insist that only the homestead on which the testator resided passed; that the description was certain and sufficient; and the addition of a false or mistaken particular would not render uncertain that which is certain; and that the clause "whereon I now reside" is the controlling one; and the exception, which is untrue, must be rejected. The court ruled against plaintiffs, and this ruling is assigned for error. 3 Pick., 272, 278; 15 John., 481; 7 Id., 217; 4 Mass., 196, 205; 5 East, 81; 6 Cranch, 235; 7 N. H., 244; 11 Conn., 332; 2 N. H., 175; 11 Mass., 163; 19 John., 449; 3 Greenl., 71; 5 N. H., 254; 3 Metc., 423; 11 John., 210; 5 Taunt., 321; 8 Foster, 494; 26 Penn., 132; 2 G. Greene, 368; 10 Iowa, 255.

*David Rorer* for the appellee.

1. The will is to be construed according to the intent and meaning of the testator, to be gathered from the whole instrument, and in disregard of technical words and rules. 4 Kent (2d ed.), 534; Tit. "Construction of Wills;" *Finley* v. *King*, 3 Pet., 343; *Webster* v. *Atkinson*, 4 N. H., 26; *Drew* v. *Drew*, 8 Foster (N. H.), 494–496; 1 Jarm. Wills, 338, note.

2. The control which is given to this intention by the rules of law, applies not to the description of the property or construction of words, but merely to the *nature* of the *estate* conferred. 4 Kent, 345.

3. It follows, on these principles, that the language of the testator intends to include the land in question in the term "homestead tract," from the fact that he refers to fractional section four, lying still more remote from the dwelling, as a part of the homestead.

4. If this be not the correct construction, then the lands now in litigation, and much more shown on the maps in

the pleadings, remained undisposed of by the will, which the law will not intend.

"The law presumes that a man who undertakes to make a will, does not intend to die intestate as to any part of his property; and the courts will construe wills so as to embrace all the testator's property, if the words used, by any fair interpretation, or allowable implication, will embrace it." *Gurley* v. *Thompson*, 2 Sneed (Tenn.), 387; *Foust* v. *Ireland & Hurdle*, 1 Jones (Law) N. C., 184.

5. The oral and documentary extrinsic evidence of defendant, was properly to explain the meaning of what is written in the will as to the description of the property. Wigram on Constr. of Wills, 8; *Mitchel* v. *Mitchel's Lessee*, 6 Md., 224; *Aldrich* v. *Aldrich*, 10 Cush. (Mass.), 157; *Deaf and Dumb Asylum* v. *Norwood*, 1 Busbee Eq. R., 68; *Spencer* v. *Higgins*, 22 Conn., 521; *Holton* v. *White*, 3 Zabr., 330; *Cony* v. *King*, 3 Humph., 262; 1 Greenl. Ev., §§ 286–291, 293–298, and notes; *Douglass* v. *Blachford*, 7 Md., 8; *Wood* v. *Wood*, 2 Jones Eq. (N. C.) Rep., 420; *Perry* v. *Morgan*, 1 Strobhart, 8; *Bredlinger* v. *Bredlinger*, 26 Penn. S. R. (2d Casey), 131.

6. The power to sell in the will is coupled with a trust, and survived to the remaining executor. *Taylor et al.* v. *Benham*, 5 How. (U. S.), 233; Laws 1843, Tit., Wills.

7. The court had a right to instruct the jury as to what was the testator's intention, to be gathered from the will and the evidence. *Holton* v. *White*, 3 Zabr., 330.

8. The defendant for the U. S., properly makes title as to the manner of pleading it. *Brown* v. *Huger*, 21 How., 309.

9. The cotemporaneous construction of the will as to the homestead, by the executors, and against the interest of one of them, is proper to be considered in settling this question. *Mack* v. *Nason*, 21 Verm., 115.

Lowe, J.— The heirship of the plaintiffs,— their title by descent,— and their right to recover the property in controversy, are conceded, unless the executors were authorized by the terms of the will, to sell the same.

Upon the contingency that the testator's widow should intermarry, the executors were directed to sell the homestead of the deceased. This contingency occurred, and the executors sold what they understood to be the homestead, including the land in dispute, and the defendant's title is regularly derived from such sale. If this tract, therefore, the title to which is the subject of this suit, constituted a part of the homestead-farm, at the death of the testator, in 1843, then it will be admitted that the legal title of the same is in the defendants, and the plaintiffs' action must fall to the ground.

The object of all rules of interpretation is to discover the intention, and this should be gathered from the whole instrument. In this case the testator has employed the word *homestead* to express the property which he intended his wife, during her widowhood, should possess and enjoy. If she united again in wedlock, then the same property, that is, the whole of the homestead as she had held and possessed it, was directed to be sold by the executors.

At that time, the word homestead had not, in this state (or territory, as it then was) an abstract, technical meaning, as it is now defined and understood to have, under the statute exempting a homestead from judicial or forced sales, but was used in its general or popular sense, and it in this sense that it is to be construed, or to speak, perhaps, more accurately, it should be construed in the sense in which it was used by the testator. At the time of his death, he lived on a farm in the country, of course he used the term in a sense applicable to an agricultural or country residence. Farms are of various sizes, composed of one or more tracts. The word homestead is indeterminate, and

imports no specific quantity of land, but was employed, I apprehend, by the testator, in its then common acceptation to include all the land that was appurtenant to, used and considered by him as making up the farm which he cultivated, and upon which he resided. Yet it is apparent that when land is described in a will or a deed by a word so indefinite as that of homestead, and there is nothing in the context of the instrument to explain, satisfy, or otherwise render certain the description, cases may arise when it would be very difficult to ascertain how much land was embraced by, or passed under, such a designation, and hence the courts in all such cases would be justified in resorting to the proof of extrinsic facts for the purpose of determining the quantity or particular tracts devised under the will. Wigram Constr. of Wills, 8; 1 Greenl., §§ 280–298, inclusive.

In this case, against the objection of the plaintiffs, the defendants did resort to evidence *aliunde* to show that the tract of land in controversy was treated and regarded by the testator, while in life, as a part of his home-farm, and the introduction of this testimony was not error; but taken in connection with the whole context of the will, show quite conclusively that the testator considered said land a part of his homestead, and as such, under the contingency named, did in fact pass by the words of the will to the executors. Let us consider the language of the will that gives color and support to this hypothesis, to appreciate the full force of which, it is necessary to have some idea of the relative position of the several tracts that made up the farm of the decedent.

It was composed of several prairie tracts, located in five distinct quarters of sections seven and eight, township sixty-nine, range two, west, amounting to 210 acres, more or less, all contiguous, on one of which was situated the decedent's dwelling; and of two timber tracts on the river, immediately

below the south boundary line of the city of Burlington, situated in fractional sections four and nine, in the same township and range. These two timber tracts were separated from the prairie tracts by a strip of land sixty rods wide, which at one time belonged jointly to the testator and one J. M. Wade. In conveying to the said J. M. Wade his undivided moiety in said strip, the testator reserved a private pass-way, twenty feet wide, between his prairie and timber tracts. By this private pass-way he preserved his connection with, and access to, his woodland, which supplied him with fuel and timber requisite for the use and enjoyment of his farm.

Besides the land herein referred to, the testator, at the time of his decease, owned certain lots in the towns of Burlington and Mount Pleasant, and in his will he directed his executors to sell these lots to the highest bidders; also to lay off in lots and sell in the same way, and on the same terms, his fractional section four, which was a small triangular piece of land, situated between the south line of Burlington, and the tract of land now in dispute, and which we have heretofore referred to as one of the timber tracts of the farm, but which, as a matter of fact, was further removed from the dwelling of the deceased than the land now the subject of litigation. Then comes the next two clauses of the will, which read as follows:

" I will and bequeath to my wife Catharine, during her widowhood, all my homestead tract of land, whereon I now reside, *except said fractional section four above named*, and at her death, if she dies in a state of widowhood, the same to go to all my children, in equal parts. * * * In case my wife marries again, it is then my will and desire, that my said homestead tract of land be sold and conveyed by my executors in like manner as my above named real estate is directed to be sold, and that one-third of the proceeds of such sale of the said homestead tract be paid to my said

wife as hers absolutely, and the residue to be equally divided among all my children."

Now, is there anything in this extract from the will, which shows that the testator intended to make a disposition by devise of this particular tract of land now in controversy? Clearly, we think there is, for the reason that it bears the same relation to the testator's farm and dwelling that fractional section four did, which was expressly excepted, as constituting, in the mind of the devisor, a part of his homestead, a word which he thought proper to employ as describing all the remaining land which had not been previously disposed of. This exception proves to our minds that the testator unquestionably regarded fractional section four as a part of his homestead; if so, the presumption is still stronger that he considered the fractional northwest quarter of section nine, also, as being a part of his homestead, because it was of closer proximity, and with it he had a direct communication by a private passway. This inference derives strength from the fact that if it was not devised or intended to be devised under the description of the term "homestead," then no disposition whatever was made of it, in the will of the testator, and this would be against the legal presumption that a man who undertakes to make a will, does not intend to die intestate as to any part of his property; and, say the authorities : "The courts will construe *wills* so as to embrace all the testator's property, if the words used, by any fair interpretation, or allowable implication, will embrace it." *Gurley* v. *Thompson*, 2 Sneed, 387; *Foust* v. *Ireland & Hurdle*, 1 Jones (N. C.), 184.

The errors assigned in this case relate to the court's refusal to give to the jury certain instructions, and the modification and giving of others, and the admission of certain testimony. The general tenor of the plaintiff's instructions that were refused (besides being objectionable

in form), was to give to the word "homestead" a limited or strict construction, insisting that it could only embrace a single tract of land, and that tract upon which the house in which the testator lived was situated, and especially that it could not take in a tract detached in any way from the home tract. To this view of the subject our reply has already been made, to the effect that if the term "homestead" is susceptible of this restricted meaning, still it is manifest from the language and whole context of the will, as well as the extrinsic evidence offered, that it was not used in this sense, but in a more enlarged sense, which embraced the land in dispute, and that the rules of law require the courts to adopt the latter, in order to carry out the real intention of the party. Hence the instructions offered were properly refused.

So, again, we have already answered the objection to the oral testimony. It was founded upon the notion that the term homestead had a determinate, fixed signification, representing a specific tract or quantity of land, which could not be varied by oral testimony. Such, however, is not the case, and the evidence was properly admitted.

In the trial of this cause, the defendants, with the leave of the court, severed, and the case was tried between the plaintiffs and the defendant, J. B. Edelen, who represented the Government of the United States, which was the real party and owner, for purposes of a Marine Hospital, of lots 15 and 16, parts of said disputed land.

The judgment rendered in favor of this defendant is accordingly

Affirmed.