ANNA IIMAS AND GIB IIMAS, Appellants, v. MARY NEIDT, *et al.*

**Construction of Wills:** LIMITATIONS. UPON DEVISEES. Testator devised land to his daughter K, without words of limitation, but in subsequent clauses charged the devisee with payments to the other children in case certain bequests to them should not equal K's share, and gave to his wife, during widowhood, the use of the land, until the children became of age. *Held,* that a later clause providing that, if any child should die before majority, his share should be equally divided between the survivors, was an effective limitation on the devise to K.

DEEMER, J., *dissenting, on the ground that it is a departure from the rule that an absolute devise cannot be limited by subsequent conditions.*

GRANGER, J., concurring, on the ground that, while it is a departure, it is a proper one. *Bills v. Bills,* 80 Iowa, 270, *distinguished. Jordan v. Wooden,* 39 Iowa, 453, *applied.*

CHARGES ESTABLISHED BY WILL: *Legacies and residuary estate.* 2   After declaring that his widow, during her widowhood and the minority of the children, should have the use of the land devised to the latter, testator provided that, if she re-marry, she should have fifty dollars a year for each child under fifteen years of age, but that the land should go "to the use of the respective children as named in my will." *Held,* that said yearly sum was charged against the estate, and not against the children or their land.

## *Appeal from Clarke District Court.*—HON. H. M. TOWNER, Judge.

### SATURDAY, FEBRUARY 13, 1897.

THIS is an action in equity, wherein the plaintiffs ask partition of certain real estate, between the plaintiff Anna Iimas and her sisters, the defendants Minnie Wetsell and Emma Klien. Plaintiff Anna claims title with her sisters, under the last will and testament of their father, Theobold Klien, deceased. The defendant Mary Neidt alone defends. She answered by way of cross-bill, claiming to be the absolute owner of said land by descent from her daughter, Katherine Klien, deceased. In the second count, she asks that, if the court holds that she is not the owner of said land, it be decreed that there is due to her, three hundred and thirty-three dollars and thirty-three cents, for the maintenance of said Katherine, deceased, and that the same be declared a lien upon said real estate prior to the claim of the plaintiffs, and of her co-defendants. She alleges that Katherine left no other property out of which said claim can be made. Plaintiffs demurred to both counts of said answer and cross-bill, upon grounds, which are, in substance, that they do not show that the defendant is entitled to the relief demanded. This

demurrer was overruled, and, plaintiffs electing to stand thereon, decree was entered in favor of the defendant Mary Neidt, quieting the title to said land in her.   Plaintiffs appeal.—*Reversed.*

*John Chaney* for appellants.

*W. B. Tallman* for appellees.

GIVEN, J.—I.   Theobold Klien died testate, leaving, surviving him, his widow, the defendant, Mary, since intermarried with Fred Neidt.   He also left, surviving him, the four children of himself and said Mary, namely:   Jacob, since deceased; Anna, the plaintiff, since intermarried with Gib Iimas; Katherine, since deceased, who died before reaching majority; Minnie, since intermarried with Edward Wetsell; and Emma, yet a minor.   This contention involves a construction of certain provisions in said will, and we will state sufficient of those provisions for the purposes of the questions to be considered.   The will, after the usual caption, provides, in the first paragraph, for the payment of debts, and, in the second, devises to the widow, Mary, certain real estate, and bequeaths to her all his personal property, except four promissory notes, described.   By the third paragraph, he devises certain real estate to Jacob, and, in the fourth, certain other real estate to Anna.   The fifth paragraph is as follows:   "I give and bequeath to my youngest daughter, Katherine Klien, the northwest quarter of the southwest quarter, and the southwest quarter of the northwest quarter, and the northwest quarter of the northwest quarter, all in section No. four (4) in township No. seventy-three (73), range No. twenty-seven west, in Clarke county, state of Iowa, valued at twelve hundred dollars."   In the sixth, he bequeaths to Minnie and Emma "all the money and

credits that may belong to him at the time of his death, except as heretofore willed to my wife," and provides for loaning the same at interest "until the first heir becomes of age." In said paragraph it is also provided: "And if the said amount of money is not sufficient at the time the first heir becomes of age to make each one of said heirs Minnie and Emma Klien equal to the land willed to each Jacob Klien, Anna Klien, and Katharine Klien, then said Jacob Klien, Anna Klien, and Katharine Klien shall secure sufficient amount before coming into possession of the portion willed to them, and valued at thirteen hundred dollars, by me." In the seventh paragraph, he devises to his wife, Mary, the use of certain timber land for fuel and necessary repairs on the other land, "until my first heir becomes of age," and then provides that said land shall be equally divided between his wife and children. The eighth and ninth paragraphs are as follows: "(8) I will and bequeath to my wife, Mary Klien, the use of all the land named in my will until the children become of age, in case she remains my widow. But, in case she marries again, she shall have fifty dollars a year for each child of mine under fifteen years of age, but the land willed shall go to the use of the respective children as named in my will. My wife, Mary Klien, shall keep the fences in good repair, and pay the taxes on the land willed to my children, as long as she shall have the use of it, and she shall not have the sod broken on the land willed to the children that is in grass at this time. (9) I will and bequeath that, if any of my children named in my will shall die before they become of age, their portion of my estate shall be equally divided between my surviving children."

II. By the contention between these parties, we are called upon to construe certain provisions of said will. It is a familiar principle of the law that courts,

guided by established rules of construction, must seek
for the intention of the testator, and give effect
thereto. In construing wills, we are to look to the
entire instrument, the language employed, and the
circumstances attending the execution of the will.
Plaintiff Anna contends that, under the ninth para-
graph of said will, she and her sisters, Minnie and
Emma, the only surviving children, are entitled to
the land devised to Katherine Klien, deceased. The
defendant Mary, contends that, by the fifth paragraph
of the will, said land was devised to Katherine abso-
lutely, and without limitation, and vested in her at her
father's death; and that, therefore, the ninth clause
must be considered only as an expression of a request,
wish or desire of the testator, and not as a devise.
Defendant cites and relies upon *Bills v. Bills*, 80 Iowa,
270 (45 N. W. Rep. 748), and cases therein referred to.
In that case it was held that the first clause of the
will devised and bequeathed to the widow absolutely
all the real and personal property, and that the fifth
clause, which provided that all of said property
remaining at the widow's death should be divided
among persons named, did not limit nor defeat the abso-
lute devise and bequest made in the first clause. The
court says as follows: "In our opinion, the books teach
these rules for the interpretation of wills: *First.* When
an estate or interest in lands is devised, or personalty
is bequeathed, in clear and absolute language, without
words of limitation, the devise or bequest cannot be
defeated or limited by a subsequent doubtful provision
inferentially raising a limitation upon the prior
devise or bequest. *Second.* When there is an abso-
lute or unlimited devise or bequest of property, a
subsequent clause expressing a wish, desire or direc-
tion for its disposition, after the death of the devisee,
or legatee, will not defeat the devise or bequest, nor
limit the estate or interest in the property to the

right to possess and use during the life of the devisee
or legatee.    The absolute devise or bequest stands,
and the other clause is to be regarded as presenting
precatory language.    The will must be interpreted to
invest in the devise or legatee the fee simple title of
the land, and the absolute property in the subject of
the bequest."    While courts must give effect to all
parts of the will according to the intention of the
testator where this can be done, yet where there are
contradictory provisions, so that effect cannot be
given to both, the court must determine which was
intended by the testator and give effect thereto; and
it is to these conditions that the rules announced in
*Bills v. Bills* apply.    The absolute devise and bequest
made in the first paragraph of that will could not
stand as such if effect was given to the fifth, for the
title to the widow and the right to dispose of the
property would not be absolute if what remained at
her death must go to the persons named; hence it
was held that the testator intended the absolute
devise and bequest, and that the fifth clause was a
mere expression of request.    That opinion follows
the other Iowa cases referred to therein, and in all of
them the devises or bequests were held to be absolute,
because they gave to the legatee the right to dispose
of the property, free from all conditions or limita-
tions.    Turning to this will, we see that the
devise to Katherine, as well as those to Jacob and
Anna, is subject to two conditions.    By the eighth
paragraph, the use of this land was given to the
widow "until the children became of age, in case she
remains my widow."    By the sixth paragraph, this
land was subject to be charged with whatever amount
might be found necessary to make Minnie and Emma
equal, estimating each devise of land at one thousand
three hundred dollars.    It is true, that these two pro-
visions are subsequent to those devising the land, but

it will not be contended, that for this reason they must be treated as mere requests, and no effect given to them. Had the possession of Mary, during her widowhood been questioned upon this ground, surely her right to possession would have been sustained. Taking these provisions, together with the devise to Katherine, we think it cannot be said, that the devise was without words of limitation, nor that paragraph 9 is a "doubtful provision, inferentially raising a limitation upon the prior devise or bequest." The distinction between that case and this, will be seen by referring to the recent case of *Jordan v. Woodin*, 93 Iowa, 453 (61 N. W. Rep. 948), which is identical with this in the principles involved. In that case, the will, as construed by this court, after providing for the payment of debts, and giving certain personal property to the widow, provided, in effect, as follows: It gave the undivided one-third of all the remainder of the estate to the son George, and provided that it should be put at interest for his support and education, "until he arrives at the age of majority, at which time he is to receive the principal amount and accruing interest, if any." It gave to the widow all the rest and residue of the estate, "to have and to hold the same, and every part thereof, in her own right, title, and for her sole use." Said will contained this further provision: "And, in case either my beloved wife or son shall die before the arriving at the age of majority of my son, then I give and bequeath the share of the one so dying to the survivor; and if both my son and wife shall die before my son shall attain the age of twenty-one years, or marriage, then said estate is to descend to and be inherited by those legally entitled to it under the laws of Iowa now in force." The widow re-married to Earl D. Gray, and died without issue of that marriage. She left a will, devising one-third of her

estate to her husband, Mr. Gray, one-third to her
father, and one-third to her mother. The minor,
George W. Jordan, died, and the contention was
between the plaintiff (the mother of the testator),
Charles L. Jordan, and the executor and beneficiaries
under the will of Mrs. Gray. This court, recognizing
the rule "that the whole instrument must be consid-
ered in arriving at the intention of the testator," says:
"The intent of the testator, that the property which he
devised in the third and fourth paragraphs of the will,
in the contingency which has happened, go to the
person or persons who would have been his heirs at
the time were he alive, is shown, and we do not think
it should be defeated on technical grounds."

It seems to us entirely clear, from the language
we have quoted from the sixth paragraph, and from
other expressions in the will, that it was the inten-
tion of the testator that his children should not come
into possession of the portions willed to them before
coming of age; and, in the light of this fact, it was
plainly his intention that, if either died before becom-
ing of age, the portion of that one should go to the
surviving children. Limited, as the devise to Kath-
erine was, by the right of the widow to use the land
during widowhood, and by the payment required to
be made to Minnie and Emma, Katherine could not
have made an absolute sale of the land. The testator,
having made ample provision for his widow, whether
she re-married or not, and for the support of his chil-
dren during minority, aside from their legacies, did
not contemplate that the children should use, or con-
trol, their legacies during minority. *Grindem v.
Grindem*, 89 Iowa, 295 (56 N. W. Rep. 505). To our
minds there is no conflict in the provisions of this
will. The provision of paragraph 9, is in harmony
with the limitations that were cast upon the devise to
Katherine in favor of her mother and of her sisters,

Minnie and Emma, and of the fact that she was not to come into her estate until her majority. This view gives effect to all parts of the will, and to what we think was unquestionably the intention of the testator. Our conclusion is that the plaintiffs are entitled to a partition of the land as prayed, and that the court erred. in overruling the demurrer to the first count of the answer.

III. The second count of defendant's answer and cross-bill is grounded upon the provisions of the eighth paragraph of the will. That paragraph, after providing that the widow should have the use of the land devised to the children, "until the children became of age, in case she remains my widow," provides as follows: "But, in case she marries again, she shall have fifty dollars a year for each child of mine under fifteen years of age, but the land willed shall go to the use of the respective children as named in my will." This claim of the defendant is not insisted upon in argument, and we might regard it as waived. We will say, however, that we think this was not intended to be a charge against the land, nor the children, for it is provided that the land "shall go to the use of the children as named in my will." The estate of Theobold Klien was chargeable with the support of his children during minority, and he provided therefor by giving their mother the use of his land until they became of age or she married. The fifty dollars a year was not intended to be a charge against the land or the children, but against the estate. Therefore we think the court erred in sustaining the demurrer to said second count.— Reversed.

Deemer, J. (dissenting).—The majority opinion is too wide a departure from what I regard a long and well-settled rule of construction, to receive my assent.

I refer to the doctrine that when an estate is devised in clear and absolute language, without words of limitation, the devise cannot be defeated or limited by a subsequent condition or limitation repugnant thereto. This rule was first announced in the year 1870, and has been followed with more or less certainty ever since. It is a rule of property, and should not now be disturbed. See *Alden v. Johnson*, 63 Iowa, 127 (18 N. W. Rep. 696); *Rona v. Meier*, 47 Iowa, 607; *Williams v. Allison*, 33 Iowa, 278; *In re Burbank's Will*, 69 Iowa, 278 (28 N. W. Rep. 648); *Halliday v. Stickler*, 78 Iowa, 388 (43 N. W. Rep. 228); *Pellizzarro v. Reppert*, 83 Iowa, 497 (50 N. W. Rep. 19); *Killmer v. Wuchner*, 74 Iowa, 359 (37 N. W. Rep. 778). The case of *Jordan v. Woodin*, referred to in the opinion, is not in conflict with this rule, as an examination will show.

GRANGER, J. (concurring). I desire to say, as to my concurrence in the conclusion of the majority, that I think there is a departure from the rule stated in the dissenting opinion by Mr. Justice Deemer. I have long felt that the rule was at variance with the general and universal one, that the intention of the testator is the guiding star of testamentary interpretation, and that such intention is to be gathered from all the provisions of the will. In my judgment, the rule of the cases cited in the dissenting opinion, in its application in this and other states, has so operated as to, in many cases, actually defeat the testator's intention, as understood from an application of the rules stated, by which the intention is to be known. Such would be its effect if applied in this case, for I think no one can doubt that the rule of the majority opinion accords with the manifest intention of the testator, as gathered from all parts of the will. It seems to me we are forced to in some cases disregard one of the two rules, and I may say

that the effect of our adherence to the rule indicated in the dissenting opinion as controlling, has in particular cases operated to defeat plain testamentary intentions. I know of no sound principles of jurisprudence that should permit such a result. Age should be no protection to a rule with such consequences. Esteeming, as I do, the rule that gives effect to the intentions of the testator, by considering all he has said in his testamentary acts, instead of a part of what he has said, as better adapted to meet the demands of the law, I shall be glad to, at any time, unite in making it controlling, when one of the two rules must obtain as against the other.