JOHN MEYER, Executor, Appellee, v. RACHEL WEILER AND MARIE WEILER, Appellants.

Wills: CONSTRUCTION: RRPUGNANCY: RIGHTS OF WIDOW. Where
1  a testator beqeaths to his wife all of his property, both real and personal, reciting that it is his intention to make her his sole residuary heir and legatee, she takes the fee, and a subsequent provision in the will disposing of whatever may remain at her death is void for repugnancy, and the widow's power to dispose of the remainder is unlimited.

Agreement of Devisee. A provision in a will bequeathing all of
2  testator's property to his wife in fee, that in the event of test-

ator's survival it is the express will of the wife that he shall
be her sole and only heir where neither the will nor such pro-
vision is signed by the wife, does not constitute an agreement
on her part to comply with the provisions of the will which
are repugnant to the devise to her in fee.

*Appeal from Muscatine District Court.*—HON. W. F.
BRANNAN, Judge.

MONDAY, JUNE 1, 1903.

SUIT in equity for the construction of the will of
Andrew Weiler, deceased.   The trial court found that a
certain bequest made by the devisor to his widow was of
a fee, and that defendants took nothing under the will.
Defendants appeal.—*Affirmed.*

*Jayne & Hoffman* for appellants.

*Louis Eversmeyer* and *E. M. Warner* for appellees.

DEEMER, J.—The material provisions of the will of
Andrew Weiler are as follows:
"I will and bequeath unto my beloved wife, Elizabeth
Weiler, all my personal property of whatsoever kind, to
be taken without inventory and appraisement, as well as
all real property belonging to my estate intending to make
and hereby making her the aforesaid Elizabeth Weiler, my
sole residuary heir and legatee.   It being the true object
and purpose of this bequeath however, to provide for my
said beloved wife, to the best of my ability during the
remainder of her natural life the same is hereby con-
ditioned to this effect that whatever part of my estate
may remain at the death of my beloved wife personal as
well as real, shall be then disposed of as ordained in sec-
tion fifth of this instrument."
"Fifth.   After the death of myself and the death of
my beloved wife, Elizabeth Weiler, our property, real

estate as well as personal property, if any such is left, shall go to our nearest relatives, namely,—one-half of the whole estate to the relatives of Andreas Weiler, namely: to Rachel Weiler and Marie Weiler, of Pike Township, Muscatine County, Iowa, and the other half of the whole estate to the relatives of Elizabeth Weiler my beloved wife, namely:—(1) To Mrs. Margaretha Uebelhak, born Meyer, residing at Lindenhard, Post Office, Schnabelweide, Provinz Oberfranken, Kingdom of Bavaria, one-third of the whole one-half.   (2)   John Meyer, residing near Andalusia, Rock Island County, State of Illinois, one-third of the whole one half. (3) Margaretha Meyer, residing near Andulusia, Rock Island County, State of Illinois, one-third of the whole half."

Plaintiffs are devisees under the will of Elizabeth Weiler, who died after the demise of Andrew; and the sole question for our consideration is the nature of the estate devised by Andrew Weiler to Elizabeth in the second paragraph of his will.   The proposition thus presented is one which has heretofore given us considerable trouble, and in somewhat similar cases we have been unable to agree upon the conclusion.   An extended review of the cases does not seem to be called for at this time, for they are familiar to the profession, and nothing can be gained from again stating what they in fact decide.   If wills were always couched in the same language, or if the writers thereof followed stereotyped forms, there would, perhaps, be an end to these cases.   But such a situation can hardly be expected in view of the nature of our forms of expression and of the varying circumstances and conditions under which wills are prepared.   Nevertheless, there are some established canons of construction which must be followed and preserved, else the whole matter is left in doubt and uncertainty, and no one can write his last testament with any assurance or with any hope that it will be construed as he intended it to be.

Every will and contract is drawn with reference to the law as it then exists, and, as sometimes stated, it is to be construed as if the law were written into it in express terms; and it is quite as important in construing such instruments for courts to be consistent as it is that they should be technically correct. The doctrine of *stare decisis* is essential to the establishment of any system of law, and when men are unable to rely on previous decisions their business is sorely jeopardized, their contracts set at naught, and their wishes thwarted. With these thoughts in mind, we now turn to some of the cases which have never been questioned or doubted, to see if we can find a rule which should settle this controversy.

1. WILLS; construction: repugnancy; rights of widow.

In *Law v. Douglass*, 107 Iowa, 607, we said: "There are some things, however, which even a testator cannot do, and which the courts are powerless to aid him in doing, however clear his intentions may be expressed. He cannot create a fee with absolute power of disposal, and at the same time clog that power of alienation by limitations over to another; in other words, he cannot include provisions which are absolutely inconsistent in terms and meaning, and have all given force and effect." That rule has never been departed from in any decision of this court.

*Bills v. Bills*, 80 Iowa, 269, announces this rule. "When there is an absolute and unlimited devise of property, a subsequent clause expressing a wish, desire, or direction for its disposition after the death of the devisee will not defeat the devise or bequest, nor limit the estate or interest in the property to the right to possess and use the same during the life of the devisee or legatee. The absolute devise stands, and the other clause is regarded as presenting precatory language."

In *Hambel v. Hambel*, 109 Iowa, 459, the will read: "I devise and bequeath to my wife, Lucelia A. Hambel, all my property, both real and personal, of every kind and

description that I may own at my decease." The second paragraph of the will was as follows: "I further direct that at the decease of my said wife all the property then remaining shall be equally divided between my children, except W. O. Hambel, youngest son, that may be living at the time of my decease." Our holding was that the widow took an estate in fee. The will thus construed is very similar to the one in the case at bar.

In *Halliday v. Stickler*, 78 Iowa, 388, the will gave all the property to the husband, and then provided that whatever was left at his decease should be equally divided among his children and their heirs. Held, that he (the husband) took an estate in fee. It was said in this case: "If the first devisee has power, by the terms of the will, to dispose of the property, he must be considered the absolute owner, and any limitation is void for repugnance." See, also *Rona v. Meier*, 47 Iowa, 607, and *In re Barrett's Will*, 111 Iowa, 570.

In *Baldwin v. Morford*, 117 Iowa, 72, it is said: "The general proposition is now fairly well settled that giving to the first taker a power to sell and dispose of the property, where the power is not limited to some particular or specified purpose, does not have the effect to enlarge a life estate into a fee. Where, however, the language is such that, when given its accepted legal meaning an absolute devise of the fee is created, a subsequent provision which seeks to limit or restrict the effect of the devise or reduce the fee to a life tenancy is void for repugnance." While there has never been any departure from these rules, we have held that where the first taker has but a limited power of disposition, this power will not enlarge a life estate into a fee; and have also decided that, if the first taker is given but a life estate, and to that is added unlimited power of disposition, this added power does not in all cases create a fee in the first taker. This latter

proposition was not accepted by the entire court, however. See *Podaril v. Clark*, 118 Iowa, 264.

Where power of disposition is added to a life estate, it then becomes important to determine whether it is annexed as a separate gift and should be treated as a power of appointment simply; or whether it is annexed to the primary estate devised, so that the estate conveyed pursuant to the power takes effect out of the interest of the devisee. If the former, a limited estate only is created. If the latter, an estate in fee is devised. This point is made plain in *Law v. Douglass*, *supra*, and *Van Horne v. Campbell*, 100 N. Y. 287 (3 N. E. Rep. 316, 771, 53 Am. Rep. 166). The majority made the decision in *Podaril v. Clark* turn on two propositions: First. That a life estate in express terms was devised Mary Poderil, and, as she was given but a limited power of disposition, the life estate was not enlarged. Second. The power of disposition in that case was a separate gift, and was not an incident to the life estate granted.

There is no case which even tends to sustain appellants' position unless it be *Iimas v. Neidt*, 101 Iowa, 348; but there the first taker was not given unlimited power of disposition, and the majority held that, taking the will by its "four corners," it was manifest that nothing but a life estate to the first taker was intended. There was a dissent in that case, to which the writer still adheres. Indeed, he thinks that the departure already made from established canons of construction has left courts and lawyers at sea, and that it is high time to return to the rule of *stare decisis*, especially in view of the fact that large property interests are generally involved in litigation of this character. We have now reached the point where we must overrule all our previous decisions, and say that there are no settled rules for the construction of wills in this court, or else adhere to those already made and generally understood.

To sustain appellants' contention it will be necessary to overrule not only the cases we have cited, but many more equally conclusive, and this we are not prepared to do. Taking the will. in question by its "four corners," and looking to the language employed we find that Andreas Weiler, by, the second paragraph of his will, gave his wife, Elizabeth, all his real and personal property, intending, as he said, to make her his sole residuary heir and legatee; but he also says that whatever part of his estate remains at the death of the wife shall be disposed of as provided in the fifth paragraph. The fifth paragraph then disposes of whatever may be left, if any, at the time of the wife's death. That this amounts to the gift of the testator's estate with full and unlimited power of disposition is so plain that no amount of argument can make it plainer; and it is equally clear that, if we are to follow our previous cases, we must hold that this created a fee in the first taker, and that the subsequent devises are void for repugnance.

Appellants rely on the last sentence of the second paragraph of the will; but this, to our minds, simply emphasizes the thought which the testator evidently had in mind of giving his widow full and unlimited power of disposition of an estate in fee. The true construction of this clause, we think, is that the testator makes his widow his sole residuary heir and legatee for the purpose of providing for her to the best of his ability during her natural lifetime, and that, if any of the estate thus devised remains at the time of the wife's demise, then he directs that it shall be disposed of as provided in the fifth paragraph of the will. Not only is the wife bequeathed all his property, both real and personal, with the intent of making her the sole residuary legatee, but she is to take it without appraisement, and is given full power of disposition not only by the second, but also by the fifth, paragraph of the will. The will is so similar to the wills construed in *Ham-*

*bel v. Hambel* and *Halliday v. Stickler, supra,* that the rules there announced must govern herein, or these cases must be overruled.    See, also, *Stivers v. Gardner,* 88 Iowa, 307.

Appellants contend that the widow had no power to will the estate granted her.    This contention is without merit. *Hambel v. Hambel, supra. · Pellizirro v. Reppert,* 83 Iowa, 498.

II.   The fourth paragraph of Andreas Weiler's will reads: "Fourth.   In the event that my beloved wife shall depart this life before me, then in this case it is her 

<small>2. AGREEMENT of devisee.</small> express will and testament that I, Andreas. Weiler, shall be her sole and only heir of all that is left after her death of personal property as well as real estate."   Appellants contend that by. accepting the: provisions of this last will and testament Elizabeth Weiler· consented and agreed to all its provisions, and that by a fair construction of the terms thereof she agreed not to· change the provisions of the second and fifth paragraphs giving one half of the property left by either or both to the husband's relatives and one half to the relatives of the· wife.   This argument, though specious, is unsound.   The· fourth paragraph is conditioned on the death of the wife before the death of the husband—a contingency, which did not happen.   It is not a joint will, for Elizabeth did not. sign it.   Until the death of Andreas, Elizabeth had no interest in his estate, and she did not agree to will the property received from him to any particular person or persons.   As we have found that the widow took a fee under the second and fifth clauses of her husband's will,. the other provisions thereof inconsistent with such an estate are void for repugnancy, and there is no room for the doctrine of election.   Elizabeth Weiler was not: required to devise what was left of the estate received. from her husband to the persons mentioned in the fifth. clause of his will.   *Bills v. Bills, supra.*

The trial court was right in its construction of the will and its judgment is AFFIRMED.

McCLAIN, J. (concurring).—My agreement with the result reached by the majority is founded on the view that the language of the will expresses an intent to give absolutely the property described to the widow, and also an inconsistent intent by way of condition that the property remaining undisposed of at the widow's death shall pass to other beneficiaries. Where there is such a conflict, I think it well settle1 in reason and on authority that the principal provision prevails, and the condition is void. If the language following the provision apparently giving the widow the absolute title indicates an intent to qualify the estate given to her, then it should be given effect. But it indicates, on the contrary, a wholly inconsistent intent. In other words, either the principal provision or the condition must fail, and in such a case certainly the. condition must be disregarded. The clause intervening between the words of absolute gift and the words expressing a condition do, indeed, purport to state the object and purpose of the testator; but its meaning is ambiguous. It is as consistent with the intent already expressed in the preceding clause as with the intent expressed in the condition, and it does not, therefore, support the condition as against the principal clause. If I have correctly interpreted these three clauses—the principal clause, the explaining clause, and the condition—then the conclusion of the majority would seem to be incontestable. I am unwilling, however, to indorse the assumption embodied in the majority opinion that we have lately departed from, and are now returning to, the landmarks of earlier cases, or to countenance the assumption in the dissent that the earlier cases are wrong, and are no longer to be taken as precedents. In this case there is no language indicating an intent to give the wife an estate for life, and in ad-

dition a power to dispose of the absolute title; and the views expressed by this court in reference to provisions of that character are not applicable to the case before us. Perhaps we could remake the will so as to better effect the ultimate purpose of the testator, but in arriving at the testator's intent we must limit ourselves to the interpretation of the language used. I agree that the judgment of the lower court should be AFFIRMED.

WEAVER, J. (dissenting).—Clearness and certainty in the—law especially as it relates to matters of general and vital interest—are greatly to be desired, and in no case is this result more important that in controversies arising over the distribution of property by will. If, therefore, in the present case, a surrender of my personal views would promote that desirable end, I should feel in duty bound to yield my own opinion to that of the majority. Being fully convinced, however, that the conclusions of the court as expressed by Justices Deemer and McClain are wholly without sufficient support in principle or precedent, and tend to create confusion and uncertainty concerning the fundamental rules of testamentary construction, I am compelled to dissent.

I. Referring first to the solicitude expressed by the majority for the maintenance of "established canons," I must be permitted to affirm that there is known to the law but one invariable rule of construction applying alike to all wills under all circumstances, and that rule may be stated in a half dozen words, "The intent of the testator governs." The only qualification of this principle is that the intent expressed by the will must be lawful, and its execution possible. Other rules are often cited, chief among which are: First, that in ascertaining the intention of the testator regard must be had to the entire will, and not to any one part or clause; and, second, that, the intention being ascertained, effect must be given to every

part and clause of the will, and nothing therein be rejected
or ignored, save only in those rare instances where pro-
visions are found so utterly inconsistent or repugnant that
it is impossible to reconcile them on the basis of any reas-
onable interpretation of the instrument.     These latter
propositions serve merely to support and emphasize the
fundamental rule first stated, and prevent its nullification
by any forced or partial rendering of the testator's lang-
uage.     The authorities sustaining this general view of the
law are practically innumerable, and too familiar to justify
citation.     It is an equally familiar principle that, where
the intention of the testator is clearly expressed, courts
will not resort to any technical rules of construction; for
no construction is required where the meaning is clear,
and an attempt to apply such rules to language which is
neither ambiguous nor doubtful tends to defeat, rather
than aid, the testamentary intent.   And right here, in my
view, is the vice of the process by which the decision of
this case has been reached.   The intent expressed in the
will before us is clear, definite, and certain; but by forc-
ing upon it a narrow and technical rule of construction,
which never had general recognition by the courts, and is
now rarely appealed to anywhere, we make for the testa-
tor a will which violates his expressed purpose, and diverts
his estate into a channel he never contemplated.     Indeed,
both of the majority opinions concede, in effect, that the
testator's intent is frustrated by this judgment, but justify
a departure from the general rule on the ground that the
will gives the wife an estate in fee, and that the provision
for a remainder over to the appellants is inconsistent, and
is therefore void.     If the premises thus laid are sound, I
cheerfully concede the necessity of the conclusion; for,
assuming the gift of an absolute fee to one person, there
cannot also be a gift of an estate in remainder in the same
property to another person.   This is a mere axiomatic
proposition—as if we should say that no man can make a

square circle, or give all his property to A and a part of it
to B. *Baxter v. Bowyer*, 19 Ohio St. 490. The real in-
quiry lies farther back:   Does the will create a fee
in the wife?

II.   To reach the affirmative of that proposition, we
must be able to say from the language of the will that the
testator clearly intended to invest his wife with full and
absolute ownership of his entire estate.   This we cannot
do.   We are bound to assume that he was a man of sound
mind and of average intelligence. · As such he knew that
he could not accomplish the impossible feat, to which I
have already adverted, of giving all his property to his
wife and part of it to the appellants.   The very fact that
he provides for a remainder over after the wife's death is
strong evidence that he did not understand he had already
disposed of the fee.   That fact alone has often been held
to be sufficient to qualify and restrain the effect of prior
words, which, standing alone, would be sufficient to carry
the entire estate.   *Jones' Ex'rs v. Stites*, 19 N. J. Eq. 324;
*Smith v. Bell*, 31 U. S. 68 (8 L. Ed. 322); *Cousino v.
Cousino*, 86 Mich. 323 (48 N. W. Rep. 1084); *Zimmerman
v. Anders*, (Pa.) 6 Watts & S. 218, 40 Am. Dec. 552.   The
language of the will of Andreas Weiler is in this respect
both clear and convincing.   Reading it unobscured by the
fog of technical learning, it is impossible to doubt its in-
tent.   While the instrument was apparently drawn by one
who had no clear comprehension of the precise legal defini-
tion of some of the words employed, yet taking it as a
whole its statement of the testator's purpose is simple and
direct.   His intent to give the wife a life estate is not left
to be drawn as a mere inference from the gift of a re-
mainder over.   The second paragraph not only contains
the gift to the wife, but in the same connection explains
his purpose to afford her a, life support, and provide for
the gift of the remainder over to others.   Apparently to
avoid any possible misunderstanding in this respect, he

expressly makes this paragraph subject to the provisions of the fifth paragraph, in which he repeats his direction in mandatory language, and states the names of the devisees and their respective shares in remainder. His wife is designated no more clearly or specifically than the other beneficiaries. It was both right and just that he shou'd insure the comfort and support of his widow for the rest of her life, even if it should exhaust the entire estate; but there was no legal necessity of vesting her with the fee for that purpose. It was equally just and right that he should give to the family relatives the remainder which might be unexpended at her death. This, as any lawyer would have advised him, he had the legal right to do; a right upon which it has remained for this court in the present case to cast the first shadow of doubt.

The underlying thought of the majority opinions, as I analyze them, is simply this: That whereas the testator, in making the provision for his wife, uses the words, "I will and bequeath all my property," etc., and whereas such words would of themselves ordinarily be sufficient to pass a fee, it was not competent for him by subsequent words to modify, limit, or restrict the gift to a life estate. In other words, it asserts, in effect, that from the use of the quoted words an intention to devise a fee will be conclusively presumed, without regard to subsequent provisions, even though, as men of ordinary understanding, we may be morally certain that no such purpose was in the testator's mind. I am not disposed to deny that exceptional cases may be found giving color to this most unreasonable doctrine, but, to the credit of the law be it said that the courts which now recognize its authority are rare indeed. It is true, of course, that a will must be construed to mean just what its language imports, and, if it clearly provides for a fee, we must give it effect accordingly; but before we can say that any given phrase or clause does create such an estate it must be examined

with reference to the context and the entire body of the will, and if therefrom it appears that the intent and purpose of the testator was to create merely a life estate or a trust, then such intent will be enforced, even though the first words of gift standing alone would have carried a fee. *Walker v. Pritchard*, 121 Ill. 221 (12 N. E. Rep. 336); *Morrison v. Schorr*, 197 Ill. 554 (64 N. E. Rep. 545); *Shalters v. Ladd*, 141 Pa. St. 349 (21 Atl. Rep. 596); *Hamlin v. U. S. Exp. Co.*, 107 Ill. 443; *Bowser v. Mattler*, 137 Ind. 649 (35 N. E. Rep. 701, 36 N. E. Rep. 714); *McCloskey v. Gleason*, 56 Vt. 264 (48 Am. Rep. 770). This rule is entirely ignored by the majority. It reads the will just far enough to include the language which, standing alone, would give the wife a fee, and there stops, refusing to accord any weight or influence to the language which follows. By this simple and convenient method of eliminating all qualifying clauses, every mortgage may be converted into an absolute conveyance, every penal bond into an incontrovertible evidence of debt, and the injunction, "Let him that stole, steal no more," into a divine commendation of larceny. The books are full of cases in opposition to the holding announced by the majority.

In *Siegwald v. Siegwald*, 37 Ill. 430, the will contained the following provision: "I give and bequeath to my beloved wife all my real and personal estate, wheresoever situated, in fee simple absolute, forever; that is to say, that my wife shall have all the benefits thereof until the expiration of her life, at which time my son, Anton, shall be the only heir of real or personal estate, what may be left." The court held that the wife took a life estate only, saying: "The first clause, unaffected by the words of limitation, unquestionably vested a fee simple absolute, and plaintiff in error insists they are repugnant to the devise, and are, therefore, inoperative. * * * The will must be so construed as to effectuate the intention of the testator, and that intention must be

ascertained from the language employed in the instrument itself; and in arriving at the intention all the language employed must be considered. It seems evident that the testator did not intend to devise the widow a fee simple absolute, otherwise he would not have added the limiting clause. Had that been his intention, he had fully accomplished the purpose without employing the latter clause; but when he did so it must have been to limit or qualify the estate already devised."

In *Smith v. Bell*, 31 U. S. 68 (8 L. Ed. 322,) the same question arose upon a will which gave an estate to the wife "to and for her own use, benefit, and disposal absolutely," but further gave the remainder to a son after the wife's decease. Chief Justice Marshall there says, "The latter words give the remainder to the son with as much clearness as the preceding words give the whole estate to the wife," and proceeds to reconcile the apparent repugnance by construing the devise to the wife as a life estate. He argues: "If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out. Yet both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member than the first. * * * The limitation in remainder shows that in the opinion of the testator the previous words had only given an estate for life. This was the sense in which he used them." In the *Zimmerman Case*, above cited, the Pennsylvania court discuss a similar will, saying: "If the testator had stopped at the devise to his wife of all the residue and remainder of his estate, no doubt she would have had the fee; * * * but when he proceeds

to dispose of it after her decease by giving over to another what is left after paying her funeral expenses, his intention to give her a life estate only is manifest, and the limitation over is not repugnant to the previous devise, but explanatory of it."

A striking illustration of the same principle is found in a recent Wisconsin case: *Littlewood's Will*, 96 Wis. 608 (71 N. W. Rep. 1047). The testator, in the body of the will, gave his entire estate to his wife "for her sole benefit," and appointed her executor of the will and guardian of the child without bond. The attestation clause of the instrument was in the following form: "In witness whereof I have set my hand and seal the 6th day of April, 1891, but if one or the other dies the one that survives the other takes it all." It was held that the devise to the widow was subject to the provision last mentioned. The court says: "It is true that the language of the first paragraph would give the widow an estate in fee, but it seems very clear that the final clause controls, and was meant to control, the language of the previous gift. * * * Its language is not technical, but its purpose is plain." To the same purpose it has been decided that a later clause of a will, when inconsistent with a preceding provision, "is to be considered as intended to modify or abrogate the former." *Hamlin v. U. S. Exp. Co.*, 107 Ill. 443; *Friedman v. Steiner*, 107 Ill. 125. A testator "may restrain the generality of a devise by subsequent expressions, and may convert that which would otherwise be a fee simple into an inferior interest." *Shalters v. Ladd, supra.* Directly in point also are *Friedman v. Steiner*, 107 Ill. 125; *Harbison v. James*, 90 Mo. 411 (2 S. W. Rep. 292); *Anderson v. Hall*, 80 Ky. 91; *Richardson v. Paige*, 54 Vt. 373; *In re Oertie*, 34 Minn. 173 (24 N. W. Rep. 924, 57 Am. Rep. 48); *Haldeman v. Haldeman*, 40 Pa. 34; *McMurry v. Stanley*, 69 Tex. 227 (6 S. W. Rep. 412); *Baxter v. Bowyer*, 19 Ohio St. 490; *Sweet v. Chase*, 2 N. Y. 78; *Taggart v. Mur-*

*ray*, 53 N. Y. 233; *Tyson v. Blake*, 22 N. Y. 560; *Trustees v. Kellogg*, 16 N. Y. 83; *Alexander v. Cunningham*, 27 N. C. 430; *Wager v. Wager*, 96 N. Y. 164; *Terry v. Wiggins*, 47 N. Y. 512; *Kent v. Morrison*, 153 Mass. 137 (26 N. E. Rep. 427, 10 L. R. A. 756, 25 Am. St. Rep. 616); *Mansfield v. Shelton*, 67 Conn. 390 (35 Atl. Rep. 271, 52 Am. St. Rep. 285); *Urich's Appeal*, 86 Pa. 386 (27 Am. Rep. 707). In every one of these cases the devise was sufficient to create a fee if considered independent of the subsequent limiting provisions, but in each one the limitation was given effect, modifying the devise; and every decision is a clear denial of the rule upon which the present case is made to turn.

III. Nor is the suggestion any better founded that the will before us gives the wife an unlimited power of disposition of the property, and therefore a fee. As before noted, the grant of this power is claimed by the majority to be implied from the fact that the gift to appellants is restricted to that part of the estate which may be left at the death of the wife. But such implication does not necessarily arise. It has been frequently held that, where an estate for life in both real and personal property is devised, and the remainder over is limited to "what is left" by the life tenant, there is no implied power to sell the real property, and the reference to "what is left" applies only to the personalty. *Siegwald v. Siegwald, supra.* Such, indeed, is the express holding of this court. *Greve v. Camery*, 69 Iowa, 220. Unless, therefore, we abandon the rule thus affirmed by us, there is no power of sale in this will to strengthen the presumption of a fee in the wife. But, even if the power were expressly given, the conclusion sought to be based thereon is untenable. Such power, when given in aid of a life estate, is in no proper sense unlimited. For example, in the present will the "true object" of the devise to the wife is declared to be to provide for her "during the re-

mainder of her natural life," and it follows of necessity
that the possible diminution of the estate which the test-
ator contemplated has relation only to such expenditure
as might be found necessary or reasonable to insure her
support and comfort. The power, if any be given, is "un-
restricted" only in the sense that the testator relieves her
from the annoyance of supervision by the court or by a
trustee, and leaves it to her to determine for herself
when her convenience or comfort requires a sale of any of
the property, and the unexpended proceeds of such sales
remain in her hands subject to the terms of the will. The
power of sale to a life tenant is executorial in character—
a power to change the property into money for the benefit
of the estate, or for its better enjoyment (*Baxter v. Bow-
yer, supra*)—and has no effect to enlarge the estate into a
fee. Such, also, as we shall presently see, is the doctrine
to which this court is already committed. The point of
this proposition is not to be parried by reference to the
rule that, while the power of sale added to an express gift
of a life estate will not expand such estate into a fee, yet,
if such power is added to words of general gift (not im-
porting a life estate), it will be presumed that a gift in
fee was intended. That principle, which is usually quoted
with the indorsement given it by Chancellor Kent in an
early New York case, is of undoubted soundness within
the limits of its proper application. It was an outgrowth
of the common law rule then in force that mere general
words of gift, as "I devise to A. B.," were not sufficient to
create a fee in the devisee, but were construed as passing
a life estate only. Hawkins on Wills, 130. To pass a fee,
it was required that technical words of inheritance be
employed, or, in their absence, some other words or ex-
pression indicating an intent to devise the entire estate.
The power of sale, under such circumstances, was held to
indicate that intent. This common law rule of interpret-
ing testamentary gifts has long since been modified or

abandoned in most states by statute, and in others by. gradual development in judicial opinion, and the doctrine which now prevails is that every devise carries the entire estate of the testator, unless a contrary intent is to be reasonably inferred from the terms in which the gift is made. In other words, we come back to the first and fundamental question, what did the testator intend? If the devise is otherwise in doubtful terms, a general power of sale in the first taker may well be held sufficient to indicate an intention to devise a fee; but where, from all the language employed, it is apparent that the intention was to give the first taker a life estate only, then such power will not enlarge the gift into a fee. The rule relied upon by the majority must, like all other rules of construction, yield to the clear purpose of the testator as indicated by a survey of the entire instrument. *Still v. Spear*, 45 Pa. 168; *Jourolmon v. Massengill*, 86 Tenn. 81 (5. S. W. Rep. 719); *Brasher v. Marsh*, 15 Ohio St. 108; Schouler on Wills, 464-470; *Stuart v. Walker*, 72 Me. 146 (89 Am. Rep. 311); *Patrick v. Morehead*, 85 N. C. 62 (39 Am. Rep. 684). "It is the intention of the testator, and not the rule of construction, which governs." *Matter ot James*, 146 N. Y. 100 101, (40 N. E. Rep. 876, 48 Am. St. Rep. 774); *Tebbs v. Duval*, 17 Grat. 361.

In a large proportion of all the many cases heretofore cited the first words of gift are general, and are followed by grants of power to sell and dispose of the corpus of the estate in whole or in part, yet in none of them is it held that such power was sufficient to defeat the intent of the testator to restrict the holder of such power to a life estate in the property. That the maker of the will before us did intend to limit the devise to his wife to a life estate is too evident for argument, and there is, therefore, no repugnancy whatever in the several provisions contained in the instrument, and there is, as I have shown, no rule of law which requires us to defeat his intention. On the

contrary, it is our duty as a court to actively seek for any
reasonable interpretation of his language which will give
effect to every clause of the will, and to reject none.
Under a just application of this principle it has been said
by a leading law writer that it is "very uncommon with
us to hear a court declare a will or any of it provisions
wholly inoperative by reason of repugnancy or uncer-
tainty." Redfield on Wills, page 453.

IV. The disposition made of this case is further
sought to be justified on the ground that we are bound to
such a course by former decisions of this court. Here,
also, I am compelled to take issue with the majority. We
have repeatedly adhered to the rule that the intent of the
testator, when discernible from the will, must prevail, and
that in ascertaining such intent reference must be had to
all parts and provisions of the instrument; and this rule,
faithfully observed, would render impossible the decision
we here announce. *Johnson v. Mayne*, 4 Iowa, 192;
*Hopkins v. Grimes*, 14 Iowa, 73; *Heidlebaugh v. Wagner*,
72 Iowa, 603. Moreover, we have held in numerous cases
that a gift or devise made in one paragraph or clause of a
will may be modified or limited by a subsequent paragraph
or clause. In *Meek v. Briggs*, 87 Iowa, 610, a devise
which was absolute in form was held to be subject to a
trust created by a later paragraph, because, as we said,
"construing the clauses of the will together, there can be
no doubt as to the testator's intention." In *Stiver v.
Gardner*, 88 Iowa, 307, we have a will in all essential
particulars parallel with the one at bar; the devise being
from the wife to the husband in general terms, sufficient,
if considered alone, to pass the fee, but by a later clause
provision was made by which the property should go to
others upon the death or remarriage of the devisee. In
holding that the later provision should operate as a limit-
ation upon the former, we said: "It is a fundamental
rule of construction that all of the provisions of a will

must be construed in order to arrive at the intention of the testator. If the first clause of the will, which gives and devises the land to Thomas K. Scotthorn, is to be considered alone, there can be no doubt that it would be an absolute devise. But there is the provision immediately following that at the death of Scotthorn all of said lands should go to the testator's son, and the further provision that, if Scotthorn should marry, all of said property should 'revert' to the son and daughter. These provisions are not mere recommendatory or precatory words praying or requesting that the property should go to the children upon the death or marriage of the husband. They are as absolute provisions of the will as the provisions making the devise to the husband. And they are not repugnant, because they really all relate to the same subject." The same doctrine is repeated and emphasized in the late case of *Jordan v. Hinkle*, 111 Iowa, 43, where an apparently absolute devise in one parargaph is modified by the terms of another. To this same purpose, see *Jordan v. Woodin*, 93 Iowa, 453; *Grindem v. Grindem*, 89 Iowa, 295; *Iimas v. Neidt*, 101 Iowa, 348; *Synder v. Miller*, 67 Iowa, 261.

In *Law v. Douglass*, 107 Iowa, 606, we quoted with approval the saying of Mr. Schouler that "a fee which is given in the first part of a will may be so restrained by subsequent words as to reduce it to a life estate." We are thus firmly committed to the principal doctrine for which I contend, and the first serious doubt to be cast upon it is in the decision of the present case. The cases of *Williams v. Allison*, 33 Iowa, 278; *Alden v. Johnson*, 63 Iowa, 125; *Hambel v. Hambel*, 109 Iowa, 459; *Halliday v. Stickler*, 78 Iowa, 388, and *Bills v. Bills*, 80 Iowa, 269, are not in conflict with the precedents before cited, for in each case there was a gift of the property in clear and absolute terms to the wife, and nothing to indicate that any limitation of the gift was intended except as it could be implied by the attempt in a final clause to dispose of

such part of the property as should be left at the wife's
death. It may be conceded that such a clause, unaided
by other words or expressions of the testators purpose, is
not in itself sufficient to limit the effect of prior words of
absolute gift; and such is the full extent of the holding in
the cases named. The case at bar is not of that class. In
*Rona v. Meier*, 47 Iowa, 609, the language construed was
plainly that of a mere recommendation or request, and
therefore did not detract from or modify the gift to the wife.

V. There is, however, a marked want of harmony
between some of our earlier and later cases upon the effect
to be accorded to a gift by will where such gift is accom-
panied by power of disposal. As already remarked in this
respect, unless we are prepared to abandon our decision
in *Greve v. Camery*, 69 Iowa, 220, the will before us con-
fers no power to sell the land, and we might well leave
this element out of the discussion. It seems to be as-
sumed, however, by the writers of the majority opinions,
that such authority is to be found somewhere in the will,
and that it is of decisive weight in determining the nature
of the gift to the wife. If we concede that the power to
sell is given, we have next to determine which, if either,
line of precedents is controlling. Singularly enough, while
the writer of the principal opinion concedes the conflict in
the decisions, and argues for a return to old standards, the
writer of the concurring opinion is equally certain that we
have never departed from "the landmarks of earlier
cases." It will be hard to demonstrate the correctness of
this last assumption by reference to our Reports. It can
scarcely be denied that on several occasions the court did
declare, in substance, that a power given to the first taker
to sell and dispose of the subject of the gift in whole or in
part is inconsistent with a life estate, and that the devise
was, therefore, to be construed as a fee. *Benkert v.
Jacoby*, 36 Iowa, 273; *Rona v. Meier*, 47 Iowa, 607; *Will
of Burbank*, 69 Iowa, 378; *Halliday v. Stickler*, 78 Iowa,
388. That doctrine has since been distinctly abandoned in

several opinions, most of which bear the unanimous ap-
proval of the court constituted substantially as at present.
*Estate of Proctor*, 95 Iowa, 172; *Spaan v. Anderson*, 115
Iowa, 121; *Podoril v. Clark*, 118 Iowa, 264; *Baldwin v.
Morford*, 117 Iowa, 72. That this departure was not a
matter of inadvertence, but the result of a strong convic-
tion that the rule of the earlier cases was not only wrong
in principle, but unsupported by commanding authority,
will readily be seen by a study of these opinions. As being
the later and better considered declarations of our views,
and as tending to bring us into harmony with the law as it
prevails in substantially every state of the Union, we
should acknowledge their authority, and unhesitatingly
apply the rules thus approved. Why, then, abandon the
position thus deliberately taken? Here, it would seem, is
a very proper occasion to apply the rule of *stare decisis*,
which the majority opinion commends to our considera-
tion; and if, as there said, consistency is so much to be
desired that we should maintain it even though technically
wrong, I trust I may be pardoned the suggestion that the
court is here missing an excellent opportunity to be both
consistent and right. The adoption of the majority opin-
ion is a reactionary movement, taking us back into bond-
age to an inequitable and oppressive rule, from which we
had been happily delivered—a rule which has rarely been
applied save to thwart the manifest intention of the test-
ator—and introduces an additional element of uncertainty
into the law of wills in this state. So long as it exists, the
time worn saying that ''the intention of the testator is the
pole star by which courts are guided in the interpretation
of a devise'' should be relegated to the list of legal fictions.

This dissent has extended to perhaps an unpardonable
length. The importance of the case, and my conviction
that the decision is wrong in principle, and makes the court
an instrument of injustice, constitute my only apology. I
am not ready to consent to such a result, and believe that
the judgment of the district court should be REVERSED.